**BISNAR | CHASE**
Brian D. Chase, (SBN 164109)
*bchase@bisnarchase.com*
Jerusalem F. Beligan, (SBN 211258)
*jbeligan@bisnarchase.com*
1301 Dove Street, Suite 120
Newport Beach, California 92660
Telephone: (949)752-2999/Facsimile: (949)752-2777

Attorneys for Plaintiffs and the Putative Class

*[Additional Counsel listed, next page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRELL JONES, a California resident; MICHAEL JOHNSON, a Florida resident; DERRICK PAIGE, a Texas resident; WILFREDO BETANCOURT, a Nevada Resident; YOLANDA McBRAYER, a former Colorado resident; and MICHAEL PIERSON, a North Carolina resident, individually, and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>   vs.<br><br>AGILYSYS, INC., an Ohio corporation; AGILYSYS NV, LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,<br><br>               Defendants. | Case No. CV12-3516 SBA<br><br>**COLLECTIVE ACTION**<br><br>**[UNOPPOSED]**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION, APPROVAL OF CLASS NOTICE, AND SETTING OF FINAL FAIRNESS HEARING**<br><br>Date:       November 26, 2013<br>Time:      1:00 p.m.<br>Dept:      Courtroom 1 (Fourth Floor)<br>Judge:    Hon. Saundra B. Armstrong<br><br><br>Filed:       July 6, 2012<br>Trial date:  None set |

**COHELAN KHOURY & SINGER**
Isam C. Khoury, (SBN 58769)
 Ikhoury@ckslaw.com
Michael D. Singer, (SBN 115301)
 msinger@ckslaw.com
Diana M. Khoury, (SBN 128643)
 dkhoury@ckslaw.com
J. Jason Hill, (SBN 179630)
 jhill@ckslaw.com
605 "C" Street, Suite 200
San Diego, CA 92101-5305
Telephone: (619) 595-3001 / Facsimile: (619) 595-3000

Attorneys for Plaintiffs and the Putative Class

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND .................................................................. 2

    A. Defendants Agilysys, Inc., and Agilysys NV, LLC ........................................... 2

    B. Named Plaintiffs .................................................................. 2

    C. Duties and Responsibilities of the IS Employees ................................. 3

    D. The Hours Worked by Plaintiffs and the IS Employees ........................................ 3

III.  PROCEDURAL BACKGROUND ................................................. 4

IV.  SUMMARY OF PROPOSED SETTLEMENT TERMS ............................................. 4

    A.    Gross Settlement Amount ................................................ 4

    B.    Net Settlement Amount ................................................ 5

    C.    Formula for Distribution to Participating Class Members ............................... 5

    D. Released Claims .................................................................. 5

    E. Claims Administrator and Notice Packet to the Class ........................................ 6

V.   THE COURT SHOULD PRELIMINARILY APPROVE THE COLLECTIVE ACTION SETTLEMENT AND SET A FINAL FAIRNESS HEARING DATE ........ 6

    A.    Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation ........................................ 8

    B.    The Extent of Discovery, and the Stage of the Proceedings Support the Settlement ........................................ 8

    C.    The Settlement is the Product of Serious, Informed and Non-Collusive Negotiations; Class Counsel are Experienced in Similar Litigation ............. 11

    D. The Proposed Settlement Does Not Grant Preferential Treatment ..................... 13

    E. The Proposed Settlement is a Reasonable Compromise of Claims .................... 13

VI.  CLASS COUNSELS' ATTORNEYS' FEES REQUEST AND CLASS REPRESENTATIVE PAYMENTS .......................................... 15

    A.    Motion for Award of Attorneys' Fees and Litigation Costs .......................... 15

    B.    Proposed Class Representative Payments to the Named Plaintiffs ............... 15

VII. THE PROPOSED FLSA CLASS SHOULD BE CONDITIONALLY CERTIFIED TO FACILITATE NOTICE TO PUTATIVE CLASS MEMBERS ...... 16

VIII.   CONCLUSION .................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Beale v. District Court of Columbia*
    789 F.Supp. 1172 (D.D.C. 1992) ............................................................ 16

*Boyd v. Bechtel Corp.*
    485 F.Supp. 610 (N.D.Cal. 1979) ...................................................... 9, 12

*Brotherton v. Cleveland*
    141 F. supp. 2d 907 (S.D. Ohio 2001) .................................................. 16

*Cantu v. Vitol, Inc.*
    2009 WL 5195918 (S.D. Tex. 2009) ...................................................... 17

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) ................................................................ 7

*Ellis v. Naval Air Rework Facility*
    87 F.R.D. 15 (N.D.Cal. 1980) ............................................................... 12

*Fisher Bros. v. Cambridge Lee Industries, Inc.*
    630 F.Supp. 482 (E.D.Pa. 1985) ........................................................... 12

*Glass v. UBS Financial Services*
    2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ....................... 16

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1988) ................................................................ 7

*Hoffman-La Roche, Inc. v. Sperling*
    493 U.S. 165 (1989) ......................................................................... 7, 17

*In re Mego Fin. Corp. Sec. Litig.*
    213 F. 3d 454, 459 (9th Cir. 2000) ....................................................... 14

*In re Omnivision Technologies, Inc.*
    2007 U.S. Dist LEXIS 95616 (N.D. Cal. 2007) .............................. 12, 15

*Johnson v. Koch Foods, Inc.*
    657 F.Supp.2d 951 (E.D. Tenn. 2009) ................................................. 17

*Kane v. Gage Merchandising Serivces, Inc.*
    138 F.Supp.2d 212 (D. Mass. 2001) ..................................................... 17

*Linney v. Cellular Alaska Partnership*
    151 F.3d 1234 (9th Cir. 1998) ......................................................... 14, 15

*Lynn's Food Stores, Inc. v. United States*
    679 F. 2d 1350 (11th Cir. 1982) ............................................................. 7

*Miles v. Ruby Tuesday, Inc.*
        799 F. Supp. 2d 618 (E.D. Va 2011) .......................................................... 7

*Officers for Justice v. Civil Serv. Comm'n*
        688 F.2d 615 (9th Cir. 1982), cert. den. 459 U.S. 1217 (1983) ............... 15

*Powers v. Centennial Communications Corp.*
        679 F.Supp.2d 918 (N.D. Ind. 2009) ...................................................... 17

*Singer v. Becton Dickinson & Co.*
        2010 U.S. Dist. LEXIS 53416 at *24-26 (S.D. Cal. June 1, 2010) .......... 16

*Staton v. Boeing Corp.*
        327 F.3d 938 (9th Cir. 2003) .................................................................. 16

*Udvari v. U.S.*
        28 Fed.Cl. 137 (1993) ............................................................................ 16

*Van Bronkhorst v. Safeco Corp.*
        529 F.2d 943 (9th Cir. 1976) .................................................................... 7

*Van Vranken v. Atlantic Richfield Co.*
        901 F. Supp. 294 (N.D. Cal. 1995) ......................................................... 16

*Vasquez v. Coast Valley Roofing, Inc.*
        670 F. Supp. 2d 1114 (E.D. Cal. 2009) .................................................. 16

## <u>STATUTES AND REGULATIONS</u>

<u>Page</u>

<u>*Federal Rules of Civil Procedure*</u>
        Rule 23 ................................................................................................ 1, 7

<u>*United States Code*</u>
        Title 29, Sections 201-219 ...................................................................... 6
        Title 29, Sections 216(b) ..................................................................., 16

## I.      INTRODUCTION

On June 6, 2013, Plaintiffs previously filed a motion for preliminary approval of a class settlement.  The motion asked the Court to approve two settlement classes: (1) a national FLSA class and (2) a Rule 23 California Class.  On August 15, 2013, the Court denied Plaintiffs' motion on the grounds that the California settlement class failed to satisfy Rule 23's numerosity requirement.  On or about October 9, 2013, the Parties agreed to enter into an amended class settlement agreement based on a single nationwide FLSA class, and which they present now for preliminary approval.   (Declaration of Isam C. Khoury, ("Khoury Decl.") ¶33.)

Plaintiffs Terrell Jones, Michael Johnson, Derrick Paige, Wilfredo Betancourt, Yolanda McBrayer, and Michael Pierson ("Plaintiffs") seek preliminary approval of a proposed Collective Action Settlement on behalf of Plaintiffs and the proposed Class of individuals employed by Defendants Agilysys, Inc., and Agilysys NV, LLC. ("Defendants" or "Agilysys") as Installation Specialists (the "IS" employees or positions), who were misclassified as "exempt" from the requirements of overtime wages  under the Federal Labor Standards Act ("FLSA") at any time during the period from July 5, 2009 through March 4, 2013.  This wage and hour putative class action was filed pursuant to the FLSA and Federal Rule of Civil Procedure ("FRCP") Rule 23. The FLSA collective action involves a total of 127 current and former IS employee.  (Khoury Decl., ¶8.)

Subject to Court approval, Plaintiffs and the putative Class have settled their FLSA claims against Defendants for the Gross Settlement Amount ("GSA") of $1,478,819.00, which sum includes payments for attorneys' fees and litigation costs, claims administration expenses for dissemination of the Class notice and performing settlement administration, and the proposed Class Representative enhancement payment to each plaintiff.  (Khoury Decl., ¶9.)  In addition to the GSA, Defendants will also pay the employer's share of payroll taxes on the portion of the Settlement Payment to Authorized Claimants.  (*Id.*)

For purposes of the proposed Settlement, Plaintiffs now seek certification as a collective action under 216(b) of the FLSA, the appointment of Plaintiffs' attorneys as Class Counsel, the appointment of Plaintiffs as the Class Representatives, and the appointment of the Rust

1    Consulting, Inc. as the Claims Administrator to administer notice to the putative Class which will

2    inform them of the proposed Settlement, their rights to opt-in into the FLSA Class, or object to

3    the proposed Settlement.  Plaintiffs also respectfully request that the Court set a date for a final

4    fairness and approval hearing.  (Khoury Decl., ¶10.)

5    **II.      BACKGROUND**

6        **A.      Defendants Agilysys, Inc., and Agilysys NV, LLC**

7        Defendants are reputed to be the leading developer and marketer of proprietary enterprise

8    software, services and solutions to the hospitality and retail industries.  Agilysys services casinos,

9    resorts, hotels, food service venues, stadiums, cruise lines, grocery stores, convenient stores,

10   general and specialty retail business and partners.  Agilysys is a large multi-national corporation

11   with locations nationwide, and develops customized software suites for large clients for Point-of-

12   Sale ("POS") revenue handling.  In order to develop a client plan, other employees engage in "site

13   surveys" that result in a detailed and pre-packaged plan, custom suited for the client's business

14   operations.  Once the client purchases the software packet, it includes all necessary steps,

15   including hardware, system, network and computer upgrades necessary to install Agilysys'

16   proprietary POS software and hardware, with numerous step-by-step "Installation and Upgrade

17   Guides" which detail virtually every aspect of the installation process to be followed by the IS

18   employees.  (Khoury Decl., ¶11.)

19       **B.      Named Plaintiffs**

20       Plaintiffs are former IS employee of Agilysys whose duties entailed the installation,

21   configuration, troubleshooting and  maintenance of pre-packaged specialized software sold by

22   Defendants to large clients in the hospitality industry (i.e., casinos, hotels, cruise lines, etc.).  As

23   IS employees, Plaintiffs worked in one or more of the following positions during the relevant

24   Class Period: (1) Application Support Specialist HS, (2) Application Support Specialist Sr. HS,

25   (3) Installation Specialist HS, (4) Installation Specialists Sr. HR, (5) Remote Services Engineer I

26   HS, (6) Solutions Engineer HS, or (7) Team Leader Installation HS (the "Covered Positions").

27   (Terrell Jones Declaration ("Jones Decl."), ¶ 2; Michael Johnson Declaration ("Johnson Decl."), ¶

28   2; Derrick Paige Declaration ("Paige Decl."), ¶ 2; Wilfredo Betancourt Declaration ("Betancourt

P a g e | **2**
Memorandum of Points and Authorities ISO of Motion
for Order Granting Preliminary Approval of Class Action Settlement          Case No. CV12-3516-SBA

1    Decl."), ¶ 2; Yolanda McBrayer Declaration ("McBrayer Decl."), ¶ 2; and Michael Pierson
2    Declaration ("Pierson Decl."), ¶ 2), (Khoury Decl., ¶12.)

3          **C.     Duties and Responsibilities of the IS Employees**

4          Plaintiffs' duties and responsibilities as IS employees were manual, routine, and repetitive.
5    Their job was labor intensive and pre-determined by step-by-step "Installation Guides."  Thus, for
6    those clients who only require software installation, the IS employees literally point, click and
7    read the instructions to download and install software.  On occasion, the site surveyor misses
8    something, like the need for an operating system upgrade in order for the Agilysys software to
9    work properly, which then gets re-submitted and included in the installation.  The IS employees
10   do not engage in any selection of software, hardware, system or application for any of Agilysys'
11   clients as this is all done by the sales and site surveyors.  At its core, the IS employees are a
12   technician position, with no significant discretion or independent judgment.  The IS employees
13   were to merely follow the installation guide, configure, set-up, and troubleshoot Agilysys'
14   software package.  Problems with the software or the need for patchwork for any missing steps in
15   the installation guide are addressed by developers or the site-surveyor, not the IS employees.  In
16   general, once IS employees were sufficiently trained on the software and installation guides in
17   various types of hospitality groups, they were trained to be site surveyors to move into more
18   refined company positions with less manual work and more client development.  The IS position
19   did not require any advanced degree, licensure or state sanctioned certification.  A basic ability to
20   follow the specifications is all that was required to be a successful installer.  (Khoury Decl., ¶13.)

21         **D.     The Hours Worked by Plaintiffs and the IS Employees**

22         During the Class Period, Defendants' normal business hours were 8 a.m. to 5 p.m.,
23   Monday through Friday.  Plaintiffs and the IS employees, however, worked beyond these regular
24   hours and days due to the nature of their work and the nature of their hospitality-industry clients'
25   work.  The IS employees were expected to be flexible in relation to the clients' schedule to
26   minimize the interruption of the clients' business which resulted in working odd hours at low
27   impact times to conduct the installation and configuration process.  The IS employees worked
28   nights and weekends, and were expected to travel with little advance notice; otherwise, they

would be subject to disciplinary action, including termination.  For example, a cruise ship only wanted its Point of Sale ("POS") software installed in the early morning hours after most of its casino operations were minimal.  The same was true for other hotels, resorts and casinos, which would require system installations at low-peak times.  The Plaintiffs reported substantial weekly overtime hours worked.  (Khoury Decl., ¶14.)

Furthermore, Plaintiffs contend that they and other IS employees were not permitted to record all of their time worked.  (Khoury Decl., ¶15.)  According to Defendants' employee manual, "[e]xempt employees are required to complete a time card on an *exception basis only*" and are "exempt from the overtime provisions of the [FLSA]."  Plaintiffs contend that all IS employees were directed to stop recording the actual hours they worked, and instead to insert the amount of hours they were budgeted to work that day:  "The rule of thumb should be 8 hours budgeted each day onsite."  Plaintiffs were instructed to record 8 hours per any day for billable time to clients, even if the daily work was 9, 10 or more hours of actual work.  (Khoury Decl., ¶16.)  The result was that Agilysys did not have any accurate measure of total hours worked necessary to show whether or not, on an hourly basis, it ever satisfied basic salary thresholds for Plaintiffs and/or the Class.  For some IS employees, whose wages started around $16/hour or less, if actual work time were tracked, they did not meet the FLSA requirements because the hourly rate/wages were diluted by overtime hours worked.  (Khoury Decl., ¶17.)

## III.    PROCEDURAL BACKGROUND

The litigation history and procedural background are set forth in detail in the Declaration of Isam C. Khoury at paragraphs 18 through 34.

## IV.    SUMMARY OF PROPOSED SETTLEMENT TERMS

**A.    <u>Gross Settlement Amount</u>**.  The Parties have agreed (subject to and contingent upon approval of this Court), that this action be settled and compromised for the GSA of $1,478,819.00, which sum includes (a) attorneys' fees in an amount not to exceed 25% of the GSA or rather $369,704.75; (b) litigation costs estimated at $25,000; (c) Class Representative Payment of up to $5,000 for each of the six named Plaintiffs; and (d) claims administration expenses to Rust Consulting, Inc., estimated at $16,500.  (Khoury Decl., ¶35.)

**B.**     <u>Net Settlement Amount</u>.  After all Court-approved deductions, the remaining sum ( "NSA") estimated at $1,037,614.25 will be distributed to all Class Members who return valid and timely Claim Forms/FLSA Consent to Join Forms ("Claim Form").  In addition to the GSA, Defendants will also pay the employer's share of applicable taxes on the portion of the participating Class Member's Settlement Payment allocated to wages.[1]  (Khoury Decl., ¶36.)  All unclaimed shares of the NSA by a Class Member will be redistributed proportionately among the Participating Class Members.  No portion of the Settlement will revert to Defendants. (Khoury Decl., ¶38.)

**C.**     <u>Formula for Distribution to Participating Class Members</u>.  Participating (or "Authorized") Class Members will receive their proportionate share of the NSA based upon the number of weeks he or she worked during the relevant Class Period in relation to the number of weeks worked by all members of the Class.  (Khoury Decl., ¶39.)  With an estimated **12,973** weeks worked by the 127 Class Members, each Participating Class Member can expect to receive an estimated **$79.98**, less taxes, for each week worked during the Class Period.  Based on the estimated rate, and assuming that all members of the Class participate in the Settlement, if a Class Member worked the entire Class Period, he or she could expect to receive an estimated **$15,287.61** less taxes.   (Khoury Decl., ¶40.)

**D.**     <u>Released Claims</u>.  Participating Class Members, (those who return a Claim Form/FLSA Consent to Join form) will release any and all actions, causes of action, grievances, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (including attorneys' fees and costs actually incurred), of whatever character, in law or in equity, known or unknown, asserted, whether in tort, contract, or for violation of any state or federal statute, rule or regulation, including state or federal wage and hour laws, whether for economic damages, non-economic damages, restitution, penalties, or liquidated damages <u>arising out of or related</u> to the claims and facts asserted in the Action including, without limitation,

---

[1]  The Settlement Payments to participating Class Members are characterized as 67% wages for which an IRS W-2 form will be issued, and 34% as penalties and interest for which an IRS 1099 form will be issued.  (Khoury Decl., ¶37.)

claims based on the allegations in the First Amended Complaint for failure to pay overtime in violation of the FLSA, 29 U.S.C. §§ 201-219. (Khoury Decl., ¶41.)

Class Members can only be bound by the judgment and Release of Claims when he/she returns a Claim Form. (Khoury Decl., ¶42.)

**E.** **Claims Administrator and Notice Packet to the Class**. Rust Consulting, Inc., the Claims Administrator selected by the Parties, will conduct a search of the National Change of Address database to update Class Member addresses, and will thereafter mail to each Class Member identified by Defendants' employment records, a Notice of Class Action Settlement ("Notice"), Claim Form/FLSA Consent Form ("Claim Form"), and a pre-printed, postage paid return envelope, (collectively "Notice Packet"). (Khoury Decl., ¶43, Exh. A: Notice, Exh. B: Claim Form.)

The proposed Notice advises the Class of their rights (1) to participate in the proposed Settlement with the return of a Claim Form, (2) to object to the Settlement or to any of its terms, (3) to dispute the number of weeks worked shown in their Claim Forms upon which their Settlement Payment will be based, and (4) for each of the foregoing actions, the manner and deadline date for doing so. The Notice also informs the Class of the date of the final fairness hearing. (Khoury Decl., ¶44 - Exh. A -Notice.)

The Claim Form contains the Class Member's personalized information such as his/her name, address, dates of employment, the number of weeks worked during the Class Period, and the estimated payment he/she could expect to receive if they returned a signed, dated, and timely Claim Form. (Khoury Decl., ¶45- Exh. B- Claim Form.)

To encourage claim form submissions, the Settlement also provides for a postcard to be mailed 30 days after the initial mailing by the Claims Administrator to all Class members who have not by that date returned a Claim Form to remind them of the deadline date to submit a Claim Form. (Khoury Decl., ¶46.)

**V.** **THE COURT SHOULD PRELIMINARILY APPROVE THE COLLECTIVE ACTION SETTLEMENT AND SET A FINAL FAIRNESS HEARING DATE.**

As noted by this Court in its Order Denying Plaintiffs' Motion for Preliminary Approval,

(Docket Nos. 26, 27), settlement of private collective action claims under FLSA require court approval. *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1353 (11th Cir. 1982). A proposed settlement which involves a compromise by an employee will be approved only after the court determines that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* "[T]he reason judicial approval is required for FLSA settlements is to ensure that a settlement of an FLSA claim does not undermine the statute's terms or purposes." *Miles v. Ruby Tuesday, Inc.*, 799 F. Supp. 2d 618, 622-23 (E.D. Va 2011). The Court further indicated that although it is not entirely clear that preliminary approval of a proposed FLSA settlement is required as in the case of a Rule 23 class action, the Court may nonetheless conditionally certify an FLSA suit as a collective action so that similarly-situated employees receive notice of the action and the proposed settlement. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (noting that the FLSA requires courts to provide potential plaintiffs' "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."); *see also, Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1124 (E.D. Cal. 2009) ("Subject to final approval at a later date, conditional certification of a settlement class under the FLSA is appropriate.").

Courts must give "proper deference" to settlement agreements, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (quotations omitted.)

Further, the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1275 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Preliminary approval is thus appropriate and the Court should allow the notice of the proposed Settlement to be disseminated to the Class.

### A.   Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation.

The Settlement was reached as a result of the arms'-length negotiations facilitated by an experienced and well-respected mediator.  (Khoury Decl., ¶47.)   Though cordial and professional, the settlement negotiations have been, at all times, adversarial and non-collusive in nature.  Continued good faith, but occasionally contentious, negotiations were required to ultimately reach agreement.  While Plaintiffs believe in the merits of their case, they also recognize the inherent risks and uncertainty of litigation and understand the benefit of providing a significant settlement sum now as opposed to risking (i) denial of the FLSA collective action certification; and/or (ii) an unfavorable result on the merits on summary judgment or at trial and/or on an appeal, a process that can take several more years to litigate.  (Khoury Decl., ¶48.)

Plaintiffs' claims involve complex and disputed legal issues and fact-specific arguments which the Parties have litigated fiercely since inception of the action.  Plaintiffs firmly believe in the strength of their claims, but Agilysys also has strong defenses to liability.  There are also significant risks to Plaintiffs' ability to maintain conditional certification of a collective action. (Khoury Decl., ¶49.)

The FLSA claims for the alleged failure to pay overtime wages to the Class by instructing them to not report all hours worked would involve representative sampling and testimony of Class Members and of Defendants' management in offices around the country in light of the lack of written evidence to support such claims.  (Khoury Decl., ¶50.)

Although Defendants believe Plaintiffs will face several steep hurdles going forward should this matter not resolve, it is also mindful that there are risks and significant expenses associated with proceeding further in the case.  (Khoury Decl., ¶51.)

### B.   The Extent of Discovery and Stage of the Proceedings Support the Settlement.

The proposed Settlement is the product of substantial effort by the Parties.  As a threshold matter, the factual investigation conducted both before the Action was filed and which continued thereafter was quite robust.  Before the Parties appeared at mediation, a substantial amount of information and documents had been informally exchanged which resulted in sufficient data and

1    information to allow Plaintiffs to extrapolate class-wide damages and to participate in a

2    meaningful mediation.  (Khoury Decl., ¶52.)

3        The Parties have thoroughly investigated and evaluated the factual strengths and

4    weaknesses of this case and engaged in sufficient investigation and discovery reflected above and

5    in the Khoury Declaration to support the Settlement.  (Khoury Decl., ¶53.)  Thus, the Settlement

6    before this Court came only after the case was fully investigated by Counsel.  This litigation,

7    therefore, has reached the stage where the Parties certainly have a clear view of the strengths and

8    weaknesses of their cases sufficient to support the Settlement.  *Boyd v. Bechtel Corp*., 485 F.

9    Supp. 610, 622 (N.D. Cal. 1979).

10           **1.    Prior to Filing the Complaint.**  Substantial investigation, legal research

11   and interviews with Plaintiffs and other putative Class Members took place prior to the filing of

12   this class action.  Defendants operate multiple offices throughout California and the United States

13   in which it employs IS employees, including Arizona, Florida, Georgia, Maryland, Mississippi,

14   North Dakota, New Jersey, Nevada, New York, Oregon, Pennsylvania, Texas, Virginia,

15   Washington, and West Virginia.  Six class representatives were located and retained to represent

16   the FLSA Class.  Due to the numerous states involved, significant legal research had to be

17   performed to determine the applicable exemptions, overtime requirements, available remedies,

18   and statute of limitations ("SOLs") of each state.  (Khoury Decl., ¶61.)

19           Plaintiffs, and other putative Class Members, were interviewed to ascertain their duties

20   and method of compensation to determine whether the IS employees fell within the Computer

21   Professional or Administrative exemptions.  Their duties were then compared to the applicable

22   state and federal laws and regulations to determine whether their duties met the respective tests.

23   In addition, Plaintiffs, and other putative class members, were interviewed to determine the

24   amount of overtime hours they worked and requested to produce documents in their possession

25   which supported their claims.  (Khoury Decl., ¶62.)

26           In response, Plaintiffs, as well as other putative class members, produced to Plaintiffs'

27   counsel over 7,000 pages of documents and electronic data which included, among other things:

28   (1) Defendants' employee handbook; (2) written job descriptions of IS employees; (3) timesheets

Memorandum of Points and Authorities ISO of Motion
for Order Granting Preliminary Approval of Class Action Settlement          Case No. CV12-3516-SBA

and timecards; (4) emails; (5) policies relating to travel, comp days, recordation of hours and expenses; (6) paycheck stubs; (7) project schedules; (8) installation schedules; (9) project and status reports; (10) site surveys; (11) travel receipts; (12) expense reports; (13) performance reviews; (14) installation or configuration manuals and guides; and (10) a related prior class action lawsuit.  Plaintiffs' counsel painstakingly reviewed each of the documents produced to ensure a complete investigation and with an eye towards successfully proving the allegations contained in the Operative Complaint on a class-wide basis.  This initial workup and acquisition of documents proved crucial in the successful prosecution of this class action.  (Khoury Decl., ¶63.)

    **2. After Filing the Complaint.**  Subsequent to the filing of the Operative Complaint, the Parties engaged in extensive cooperative informal discovery and the exchange of documents and information.  In addition to the documents produced by Plaintiffs, Defendants provided extensive documents and thousands of pages of putative class data to Plaintiffs and Class Counsel to review and analyze.  This information included employment data for the entire putative Class, policies and documents relevant to the issues in the litigation, and Plaintiffs' wage statements, expense reports, and personnel files.  (Khoury Decl., ¶64.)

  On September 21, 2012, Defendants produced Plaintiffs' personnel records, which totaled 665 pages.  (Khoury Decl., ¶65.)  On January 8, 2013, Defendants produced an additional 548 pages of documents consisting of job descriptions for the IS employees and redacted Class data for employees who held IS positions, as well as expense report data, billable hour data, and wage statements of the Plaintiffs.  This information was also provided in three separate MS Excel spreadsheets, containing over 5,500 lines of combined data.  (Khoury Decl., ¶66.)

  On January 17, 2013, after meeting-and-conferring regarding the scope of the putative Class and which job titles encompass the Class, Defendants provided Plaintiffs with an additional 24 pages of documents, comprising of job descriptions and redacted Class data for the IS positions.  (Khoury Decl., ¶67.)

  Also provided to Plaintiffs on January 17, 2013 was a MS Excel spreadsheet made up of 718 lines of data representing: (1) employee ID; (2) employment State; (3) last and original hire

1   dates; (4) seniority date; (5) termination date; (6) status as of 12/26/2012; (7) length of service in

2   weeks; (8) job begin and job end dates; (9) division; (10) location; and (11) job title.  Through

3   manipulation of this spreadsheet data, Plaintiffs were able to determine the number of unique

4   employee ID numbers (prospective Class Members), the number of current and former

5   employees, and the number of eligible workweeks through December 2012.  (Khoury Decl.,

6   ¶68.)

7            On February 20, 2013, Defendants produced 64 more pages of Plaintiffs' time sheets for

8   the May 2011 through September 2011 time period.  (Khoury Decl., ¶69.)

9            Plaintiffs were able to use the data provided by Defendants, as well as the information

10   gathered from Plaintiffs, to calculate for the Class Period, the estimated number of workweeks,

11   the average hourly, overtime and double-time rates of pay, and the average hours of overtime

12   worked each week.  (Khoury Decl., ¶70.) This information was then used to create Plaintiffs'

13   mediation damage model and calculate the amount of unpaid overtime wages owed to class

14   members during the Class Period.  All of the information obtained during the investigative and

15   discovery phase, allowed the Parties to prepare for a class-wide damage model and to prepare for

16   a meaningful mediation on February 28, 2013.  (*Id*.)

17          **C.   The Settlement is the Product of Serious, Informed and Non-Collusive**
18                 **Negotiations; Class Counsel are Experienced in Similar Litigation.**

19          The proposed Settlement was reached through a fair compromise of disputed claims

20   arrived at through substantial exchange of information and data analysis followed by a full day of

21   arm's-length negotiations before a respected mediator with expertise in the relevant field.

22          Furthermore, Class Counsel, Cohelan, Khoury & Singer has had significant experience in

23   litigating misclassification, overtime, expense reimbursement, and rest/meal period cases, and

24   other wage and hour class cases and have obtained certification in these types of cases in Orange

25   County Superior Court, (before the Hon. David C. Velasquez, and the Hon. Jonathan Cannon), in

26   the Sacramento Superior Court, (before the Hon. Raymond Cadei), in the United States District

27   Court for the Southern District of California, (before the Hon. Judge Marilyn Huff and before the

28   Hon. Janis Sammartino), and in San Diego County Superior Court (before the Hon. Linda B.

1    Quinn, the Hon. Patricia A. Cowett, Hon. Timothy Taylor, and the Hon. Steven Denton).

2    (Khoury Decl., ¶71.)

3          Likewise, Class Counsel, Bisnar & Chase have had significant experience litigating

4    misclassification, overtime, expense reimbursement, rest and meal period, and other wage and

5    hour class cases.  (Jerusalem F. Beligan Declaration ("Beligan Decl."), ¶5; Brian D. Chase

6    Declaration ("Chase Decl.") ¶6; Khoury Decl., ¶72.)

7          Defendants' counsel, Francis J. Ortman, III, and Robb D. McFadden of Seyfarth Shaw

8    also are particularly experienced in wage and hour employment law and class actions.  (Khoury

9    Decl., ¶73.)

10         Experienced counsel, operating at arms-length, have weighed the strengths of the case and

11   examined all of the issues and risks of litigation and endorse the proposed Settlement.  The view

12   of the attorneys actively conducting the litigation "is entitled to significant weight" in deciding

13   whether to approve the settlement.  (*Fisher Bros. v. Cambridge Lee Industries, Inc.* (E.D. Pa.

14   1985) 630 F.Supp. 482, 488; *Ellis v. Naval Air Rework Facility* (N.D. Cal. 1980) 87 F.R.D. 15,

15   18, affd. 661 F.2d 939 (9th Cir. 1981); "The recommendations of plaintiffs' counsel should be

16   given a presumption of reasonableness" *In re Omnivision Technologies, Inc.*, (N.D. Cal. 2007),

17   559 F. Supp. 2d 1036, 1043, citing *Boyd v. Bechtel Corp., supra*, 485 F.Supp. 610, 622.)

18         Class Counsel having prosecuted numerous cases on behalf of employees for FLSA

19   violations are experienced and qualified to evaluate the Class claims and to evaluate settlement

20   versus trial on a fully informed basis, and to evaluate the viability of the defenses.  (Khoury Decl.,

21   ¶74.)  Counsel on both sides share the view that this is a fair and reasonable settlement in light of

22   the complexities of the case, the state of the law, and of the uncertainties of certification and

23   litigation.  The opinion of counsel in support of the proposed Settlement is based on a realistic

24   assessment of the strengths and weaknesses of their respective cases, extensive legal and factual

25   research, as well as substantial discovery.  The opinion of counsel is also based on an assessment

26   of the risks of proceeding with the litigation through trial and, if a verdict were recovered, through

27   appeal as compared to the certain value of a settlement at this time.  Given the risks inherent in

28   litigation and the defenses asserted, this Settlement is fair, adequate, and reasonable and in the

1  best interests of the class, and should be preliminarily approved.  (Khoury Decl., ¶77; Beligan

2  Decl., ¶¶9, 11; Chase Decl. ¶10.)

3      **D.   The Proposed Settlement Does Not Grant Preferential Treatment.**

4      No group or member of the proposed class is discriminated against under the terms of the

5  proposed Settlement.  Nor does the proposed Class Action Settlement Agreement require a bonus

6  to the named Plaintiffs or counsel for the proposed class.  It provides only that counsel for the

7  proposed class may apply to the Court for an award of their attorneys' fees and a reimbursement

8  of their expenses and costs, including the costs of administration, and that the named Plaintiffs

9  may apply for an enhancement award incurred in connection with the prosecution of this action.

10  The proposed Class Action Settlement Agreement does not condition the settlement on the

11  Court's issuance of any such awards.  (Khoury Decl., ¶78.)

12      **E.   The Proposed Settlement is a Reasonable Compromise of Claims**.

13      Based upon information obtained from the Plaintiffs and from other putative Class

14  Members regarding the number of overtime hours they worked, the Classes' blended hourly

15  overtime rate of $37.95, and the 12,973 discrete number of weeks worked by the Class produced

16  by Defendants, Class Counsel estimated the value of each overtime hour to be $492,325.35.

17  (Khoury Decl., ¶54.)  Assuming the Class worked anywhere from five to ten hours of overtime

18  per week, Defendants' liability was estimated to be in the range of $2,461,626.75 to

19  $4,923,253.50.  *Id.*

20      Plaintiffs' estimate of the overtime exposure was subject to rational discounting in light of

21  Defendants' legal argument concerning obstacles to  certification, asserting that recent decisions,

22  such as *Dukes*, would make certification unlikely for Plaintiffs, and their assertion that aggregate

23  overtime hours worked based upon information from Plaintiffs and the other informal interviews

24  was unreliable and inaccurate; further that there were many weeks wherein the IS worked from

25  home and did not accrue overtime; and that Defendants paid Class Members their full salaries

26  even when they were  not on specific assignments; and that the overtime hours fluctuated, with

27  most of them occurring on cruise ships which directed that most of the work be completed outside

28  of ships' operating hours to minimize disruption of their revenue stream.  With regard to the hours

worked on cruise ships while in international waters and/or in foreign countries, Defendants vehemently contended that neither state of federal laws would be applied to allow Plaintiffs' claims for overtime worked.  (Khoury Decl., ¶55.)

The proposed non-reversionary Settlement of $1,478,819 is 60% to 30%, of the estimated potential liability ranging from $2,461,626.75 to $4,923,253.50, respectively.   This range is very reasonable in light of the risks of obtaining an unfavorable decision on certification, summary judgment or trial.  (Khoury Decl., ¶56.)

The overall assessment of claim viability, even assuming certification, presented several significant difficulties which included (1) the risk of losing at trial and (2) the lack of willingness to participate by some current employees whose role beyond an absent class member (such as a testifying witness or declarant) would cause them to hesitate to assist in the case for fear, whether real or imagined, of retaliation.  (Khoury Decl., ¶57.)  While Plaintiffs' counsel is firmly convinced that there is general accord that the types of work being performed by the Class are now generally accepted to not be exempt task-work, this is not a given and the systems and specialized platforms that Agilysys deploys for its clients could cause a lay jury to find that the work was sufficiently discretionary and required specialized knowledge such that the Class, even certified, could lose and gain nothing at trial.  (Khoury Decl., ¶58.)  A fair settlement such as this, which provides a certain payout that accounts for an approximation of work offers a way for Agilysys to avoid costly further litigation and for Class Members, including current employees, to receive certain compensation without attenuated circumstances inherent in the employer-employee relationship.  (Khoury Decl., ¶59.)

In the face of these uncertainties, the Parties agreed to a compromise non-reversionary settlement of $1,478,819.00 for the 127 Class Members which will pay an estimated **$79.98** for each week worked by a Class Member during the Class Period.  (Khoury Decl., ¶60.)  A settlement is not judged *solely* against what might have been recovered had plaintiff prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable.  *Linney v. Cellular Alaska Partnership,* 151 F. 3d 1234, 1242 (9th Cir. 1998); *In re Mego Fin. Corp. Sec. Litig.,* 213 F. 3d 454, 459 (9th Cir. 2000).  The adequacy of the amount

1  recovered must be judged as "a yielding of absolutes. . . Naturally, the agreement reached

2  normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the

3  parties each give up something they might have won had they proceeded with litigation . . ."

4  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted),

5  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery

6  does not . . . render the settlement inadequate or unfair", "*Officers for Justice v. Civil Serv.*

7  *Comm'n* (9th Cir. 1982) at 628; see also *In re Omnivision Technologies, Inc.* (N.D. Cal. 2007)

8  2007 U.S. Dist LEXIS 95616, at p. 21, noting that certainty of recovery in settlement of 6% of

9  maximum potential recovery after reduction for attorney's fees was higher than median

10  percentage for recoveries in shareholder class action settlements, averaging 2.2%-3% from 2002

11  through 2006.)  Accordingly, the proposed Settlement is not to be judged against a speculative

12  measure of what might have been achieved.  *Linney v. Cellular Alaska Partnership, supra.*

13    In light of all the information provided above, the proposed Settlement reflects an

14  excellent recovery for the Class and is well within the "ballpark" of reasonableness and should be

15  granted preliminary approval.  (Khoury Decl., ¶79.)

16  **VI. CLASS COUNSELS' ATTORNEYS' FEES REQUEST AND CLASS**

17     **REPRESENTATIVE PAYMENTS.**

18    **A. Motion for Award of Attorneys' Fees and Litigation Costs**.

19    Class Counsels' attorneys' fees and litigation costs incurred pursuing the litigation of this

20  action will also be paid from the GSA.  Class Counsel will file a motion requesting

21  reimbursement of their litigation expenses and an award of fees (limited to 25% of the GSA) 15

22  days prior to the deadline for the Class to file objections.  The motion for attorneys' fees and costs

23  will detail the hours expended and the litigation expenses advanced.  (Khoury Decl., ¶75.)

24    **B. Proposed Class Representative Payments to the Named Plaintiffs.**

25    According to the Ninth Circuit, "...named plaintiffs ... are eligible for reasonable incentive

26  payments.  The district court must evaluate their awards individually, using 'relevant factors

27  including the actions the plaintiff has taken to protect the interests of the class, the degree to

28  which the class had benefitted from those actions, the amount of time and effort the plaintiff in

pursuing the litigation and reasonable fears of workplace retaliation.'" *Staton v. Boeing Corp.,* 327 F.3d 938, 977 (9th Cir. 2003) [citations and internal alterations omitted].

Subject to the Court's approval at the time of the final fairness hearing, Class Counsel will request on behalf of each named Plaintiff the modest sum of $5,000 for their time, effort, risks undertaken for the payment of costs in the event this action had been unsuccessful, stigma upon future employment opportunities for having initiated this action against a former employer, and a general release of all claims related to their employment, which release is broader than the release given by the Class.  The requested Class Representative Payments are fair and reasonable because each was instrumental in this litigation and in achieving the settlement in this case.  Each Plaintiff invested a great deal of personal time and effort into the investigation, prosecution, and the settlement of the case, as set forth in their respective declarations filed concurrently herewith.  The Class Representative Payment of $5,000 each is fair and reasonable.  (Khoury Decl., ¶76.)  See, e.g., *Singer v. Becton Dickinson & Co.,* 2010 U.S. Dist. LEXIS 53416 at *24-26 (S.D. Cal. June 1, 2010) ("The $25,000 incentive award is ... well within the acceptable range awarded in similar cases."); discussing, *Brotherton v. Cleveland*, 141 F. supp. 2d 907, 913-14 (S.D. Ohio 2001) (approving $50,000 class representative payment to named plaintiff]; and *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (same); *Glass v. UBS Financial Services*, 2007 U.S. Dist. LEXIS 8476, 50-52 (N.D. Cal. Jan. 26, 2007) (per Chesney, J.; approving $25,000 class representative payment].

## VII.   THE PROPOSED FLSA CLASS SHOULD BE CONDITIONALLY CERTIFIED TO FACILITATE NOTICE TO PUTATIVE CLASS MEMBERS

Under the FLSA, employees are entitled to bring lawsuits for violation of the FLSA "in behalf of … themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Plaintiffs here have affirmatively opted in by filing written consent to join forms.  (*See* ECF. No. 1, Complaint, Exh. A.)  An employee who does not join affirmatively join the class action will not benefit from the Court's decision.  *See Udvari v. U.S.,* 28 Fed.Cl. 137 (1993); *Beale v. District Court of Columbia,* 789 F.Supp. 1172 (D.D.C. 1992).  The showing to conditionally certify a FLSA class has been described as "modest" and usually requires only the examination of the

1   Plaintiffs' complaint to determine whether there has been an allegation that potential members

2   "were together the victims of a single decision, policy, or plan." *Powers v. Centennial*

3   *Communications Corp.,* 679 F.Supp.2d 918 (N.D. Ind. 2009); *Johnson v. Koch Foods, Inc.,* 657

4   F.Supp.2d 951 (E.D. Tenn. 2009); *Cantu v. Vitol, Inc.,* 2009 WL 5195918 (S.D. Tex. 2009); *Kane*

5   *v. Gage Merchandising Serivces, Inc.,* 138 F.Supp.2d 212 (D. Mass. 2001).  Here, the policies and

6   practices were common among all class members and they were all treated the same (i.e.,

7   classified as exempt, paid a salary, and not paid overtime).  As such, the Parties, for purposes of

8   the proposed Settlement, request the Court to conditionally certify the  FLSA Class so that notice

9   can be given to potential claimants. *See generally, Hoffman-La Roche, Inc. v. Sperling,* 493 U.S.

10  165 (1989).

11  **VIII.   CONCLUSION**

12          For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary

13  approval of the proposed Settlement, grant provisional certification of a collective action under

14  the FLSA for settlement purposes only, appoint Plaintiffs as the Class Representatives, appoint

15  Plaintiffs' attorneys as Class Counsel, approve as to form and order Notice to the proposed

16  settlement class, appoint Rust Consulting, Inc. as the claims administrator, and set a final

17  approval hearing date.

18                                          Respectfully submitted,
                                            Attorneys for Plaintiffs and the Putative Classes
19

20  Dated:  October 17, 2013               BISNAR | CHASE

21
                                           By: /s/  Jerusalem F. Beligan
22                                                Jerusalem F. Beligan

23  Dated:  October 17, 2013
                                           COHELAN KHOURY & SINGER
24

25                                         By: /s/  Diana M. Khoury
                                                Diana M. Khoury
26

27

28