**BISNAR | CHASE**
Brian D. Chase, (SBN 164109)
*bchase@bisnarchase.com*
Jerusalem F. Beligan, (SBN 211258)
*jbeligan@bisnarchase.com*
1301 Dove Street, Suite 120
Newport Beach, California 92660
Telephone: (949)752-2999/Facsimile: (949)752-2777

Attorneys for Plaintiffs and the Putative Class

*[Additional Counsel listed, next page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRELL JONES, a California resident; MICHAEL JOHNSON, a Florida resident; DERRICK PAIGE, a Texas resident; WILFREDO BETANCOURT, a Nevada Resident; YOLANDA McBRAYER, a former Colorado resident; and MICHAEL PIERSON, a North Carolina resident, individually, and on behalf of all others similarly situated, | Case No. CV12-3516 SBA <br><br> **COLLECTIVE ACTION** <br><br> **[UNOPPOSED]** <br><br> **DECLARATION OF ISAM C. KHOURY IN SUPPORT OF MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION, APPROVAL OF CLASS NOTICE, AND SETTING OF FINAL FAIRNESS HEARING** |
| Plaintiffs, | |
| vs. | |
| AGILYSYS, INC., an Ohio corporation; AGILYSYS NV, LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive, | Date:   November 26, 2013 <br> Time:   1:00 p.m. <br> Dept:   Courtroom 1 (Fourth Floor) <br> Judge:  Hon. Saundra B. Armstrong |
| Defendants. | |
| | Filed:   July 6, 2012 <br> Trial date:   None set |

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                     Case No. CV12-3516-SBA

**COHELAN KHOURY & SINGER**
Isam C. Khoury, (SBN 128643)
  *Ikhoury@ckslaw.com*
Michael D. Singer, (SBN 115301)
  *msinger@ckslaw.com*
Diana M. Khoury, (SBN 128643)
  *dkhoury@ckslaw.com*
J. Jason Hill, (SBN 179630)
  *jhill@ckslaw.com*
605 "C" Street, Suite 200
San Diego, CA 92101-5305
Telephone: (619) 595-3001 / Facsimile: (619) 595-3000

Attorneys for Plaintiffs and the Putative Class

I, Isam C. Khoury, declare as follows:

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                     Case No. CV12-3516-SBA

1        1.     I am a Partner with the law firm of Cohelan Khoury & Singer, co-counsel of

2 record for Plaintiff and the putative class in this matter.  I am duly admitted to practice before

3 all the courts of the state of California.  The following facts are within my personal

4 knowledge and if called to testify I could and would competently testify thereto.

5        2.     I am a 1973 Hastings School of Law graduate and was admitted to the

6 California State Bar in 1974 and am admitted to practice in all state courts in California and

7 in the following federal courts: The U.S. District Court for the Central District of California,

8 the U.S. District Court for the Southern District of California, and the U.S. District Court for

9 the Northern District of California.  I have made appearances in numerous federal courts

10 around the country as well as the First Circuit Court of the State of Hawaii.  I am AV rated

11 by Martindale-Hubbell, as are many attorneys in our firm.

12        3.     In 1981, Timothy D. Cohelan and I formed Cohelan & Khoury, a Partnership

13 of Professional Law Corporations and within a few years began to focus on class actions.  In

14 2009, Cohelan & Khoury became Cohelan Khoury & Singer.  Our firm represents plaintiffs

15 in complex and class action litigation, including wage and hour, labor and employment,

16 antitrust, consumer protection, construction defect and other public interest type class

17 actions.  Attached hereto, and incorporated herein by this reference as Exhibit 2 is a true and

18 correct copy of our firm's resume.

19        4.     Cohelan Khoury & Singer is certified by the State Bar of California to

20 provide the Mandatory Continuing Legal Education activity entitled "Litigating California

21 Class Actions" and conducts MCLE certified seminars on this topic.  Senior Partner, Timothy

22 D. Cohelan, is the author of <u>Cohelan on California Class Actions</u> (Thomson West 1997-

23 2013), part of Thomson West's Expert Series, which is updated annually.  Managing Partner,

24 Michael D. Singer, is a contributing author on the CEB publication <u>California Wage and</u>

25 <u>Hour Law: Compliance and Litigation</u> (2010, updated annually), in which he wrote the

26 opening chapter overview on California Wage and Hour laws, including the public policy

27 underpinnings for those laws.  Mr. Singer has served as a columnist for the California State

28 Bar, Litigation Section on wage and hour litigation and has contributed articles on wage and

hour and class action issues through the years to numerous California publications. He

lectures several times per year for continuing education courses on wage and hour and class

action issues at events in San Diego, Orange County, Los Angeles, and San Francisco, and

also serves as wage and hour amicus liaison for California Employment Lawyers, drafting,

reviewing, and coordinating amicus filings on wage and hour issues in the California

Supreme Court and Courts of Appeal.  Mr. Singer has been engaged in the practice of labor

and employment law since 2000, handling well over 100 wage and hour class actions and

several individual labor cases, and has litigated several types of employment actions,

including complex ERISA employee welfare benefit plan cases, as well as wage and hour

class actions before Federal and State Courts in California. In addition, Mr. Singer has

drafted numerous appellate briefs as the appellant, respondent, or amicus curiae in

employment class and individual actions. As co-Class Counsel in the *Brinker Restaurant*

*Corp. v. Superior Court* [(2008)165 Cal.App.4th 25] matter, he argued before the Fourth

District Court of Appeal in May 2008 on transfer from the California Supreme Court, and co-

authored the granted Petition for Review of the July 22, 2008 decision in the California

Supreme Court, which was granted on October 22, 2008, oral argument heard on November

8, 2011, ruling issued on April 12, 2012.  Furthermore, Cohelan Khoury & Singer has

successfully tried class cases, obtained appellate reversals of class certification denials (*Hicks*

*v. Kaufman and Broad*, (2001) 89 Cal.App.4th 908), certified wage and hour classes, and has

been appointed class counsel in dozens of cases.

     5.     As a part of our overall firm philosophy lawyers perform community service

and pro bono work.  Firm volunteer work includes service through the Legal Aid Society-

Employment Law Center (LAS-ELC), San Diego Volunteer Lawyer Program (SDVLP),

Consumer Attorneys of San Diego (CASD), and Voices for Children.  Mr. Singer currently

serves on the LAS-ELC Board of Directors.  Mr. Cohelan currently serves on the Board of

Directors for San Diego Volunteer Lawyers Program and completed 24 years of volunteer

judicial service as a Judge Pro Tem of the San Diego Superior Court.  Partner Diana M.

Khoury has served on the Board of Directors for the Consumer Attorneys of San Diego since

1  2010, and has served and chaired numerous committees over the years for the Consumer

2  Attorneys of California and the San Diego County Bar Association.  Recent pro bono

3  victories include a settlement with the City of San Diego which prohibits the City from

4  targeting homeless persons for illegal lodging tickets under Penal Code Section 467(j).

5  (*Spencer v. City of San Diego*, USDC Case No 04CV-2314 BEN (WMC).)  The Parties, in

6  Spencer, recently entered into a settlement that has the effect of increasing the number of

7  available City of San Diego shelter beds.

8        6.      Associates at the firm are encouraged to perform pro bono legal services.

9  For example, Kimberly Neilson participated in a class action trial advocating on behalf of

10  low-income tenants for local rent control ordinance violations which resulted in a verdict on

11  the tenants' behalf.  Ms. Neilson has been an active member of the San Diego County Bar

12  Association, having served as a committee member; the Lawyers Club of San Diego, having

13  served as a committee member and as a volunteer for the annual Women's Resource Fair;

14  and, devotes approximately 10-15 hours each month volunteering and advocating on behalf

15  of San Diego County foster youth with Voices for Children, the local affiliate of Court

16  Appointed Special Advocates.

17        7.      We consider ourselves experienced and qualified to evaluate the Class claims

18  and viability of the defenses.  This experience allowed our firm to achieve an efficient

19  resolution of the claims in this matter.

20                                      **INTRODUCTION**

21        8.      Plaintiffs Terrell Jones, Michael Johnson, Derrick Paige, Wilfredo

22  Betancourt, Yolanda McBrayer, and Michael Pierson ("Plaintiffs") seek preliminary approval

23  of a proposed Collective Action Settlement on behalf of Plaintiffs and the proposed Class of

24  individuals employed by Defendants Agilysys, Inc., and Agilysys NV, LLC. ("Defendants"

25  or "Agilysys") as Installation Specialists (the "IS" employees or positions), who were

26  misclassified as "exempt" from the requirements of overtime wages  under the Federal Labor

27  Standards Act ("FLSA") at any time during the period from July 5, 2009 through March 4,

28  2013.  This wage and hour putative class action was filed pursuant to the FLSA and Federal

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement              Case No. CV12-3516-SBA

1    Rule of Civil Procedure ("FRCP") Rule 23.  The FLSA collective action involves a total of

2    127 current and former IS employees.

3         9.    Subject to Court approval, Plaintiffs and the putative Class have settled their

4    FLSA claims against Defendants for the Gross Settlement Amount ("GSA") of

5    $1,478,819.00, which sum includes payments for attorneys' fees and litigation costs, claims

6    administration expenses for dissemination of the Class notice and performing settlement

7    administration, and the proposed Class Representative enhancement payment to each

8    plaintiff.  In addition to the GSA, Defendants will also pay the employer's share of payroll

9    taxes on the portion of the Settlement Payment to Authorized Claimants.

10        10.    For purposes of the proposed Settlement, Plaintiffs now seek certification as

11   a collective action under 216(b) of the FLSA, the appointment of Plaintiffs' attorneys as

12   Class Counsel, the appointment of Plaintiffs as the Class Representatives, and the

13   appointment of the Rust Consulting, Inc. as the Claims Administrator to administer notice to

14   the putative Class which will inform them of the proposed Settlement, their rights to opt-in

15   into the FLSA Class, or object to the proposed Settlement.  Plaintiffs also respectfully

16   request that the Court set a date for a final fairness and approval hearing.

17                                    **BACKGROUND**

18        11.    Defendants are reputed to be the leading developer and marketer of

19   proprietary enterprise software, services and solutions to the hospitality and retail industries.

20   Agilysys services casinos, resorts, hotels, food service venues, stadiums, cruise lines, grocery

21   stores, convenient stores, general and specialty retail business and partners.  Agilysys is a

22   large multi-national corporation with locations nationwide, and develops customized

23   software suites for large clients for Point-of-Sale ("POS") revenue handling.  In order to

24   develop a client plan, other employees engage in "site surveys" that result in a detailed and

25   pre-packaged plan, custom suited for the client's business operations.  Once the client

26   purchases the software packet, it includes all necessary steps, including hardware, system,

27   network and computer upgrades necessary to install Agilysys' proprietary POS software and

28   hardware, with numerous step-by-step "Installation and Upgrade Guides" which detail

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                    Case No. CV12-3516-SBA

1  virtually every aspect of the installation process to be followed by the IS employees.

2      12.    Plaintiffs are former IS employee of Agilysys whose duties entailed the

3  installation, configuration, troubleshooting and  maintenance of pre-packaged specialized

4  software sold by Defendants to large clients in the hospitality industry (i.e., casinos, hotels,

5  cruise lines, etc.).  As IS employees, Plaintiffs worked in one or more of the following

6  positions during the relevant Class Period: (1) Application Support Specialist HS, (2)

7  Application Support Specialist Sr. HS, (3) Installation Specialist HS, (4) Installation

8  Specialists Sr. HR, (5) Remote Services Engineer I HS, (6) Solutions Engineer HS, or (7)

9  Team Leader Installation HS (the "Covered Positions").  *See*, the Declarations of the six

10  named Plaintiffs.)

11      13.    Plaintiffs' duties and responsibilities as IS employees were manual, routine,

12  and repetitive.  Their job was labor intensive and pre-determined by step-by-step

13  "Installation Guides."  Thus, for those clients who only require software installation, the IS

14  employees literally point, click and read the instructions to download and install software.

15  On occasion, the site surveyor misses something, like the need for an operating system

16  upgrade in order for the Agilysys software to work properly, which then gets re-submitted

17  and included in the installation.  The IS employees do not engage in any selection of

18  software, hardware, system or application for any of Agilysys' clients as this is all done by

19  the sales and site surveyors.  At its core, the IS employees are a technician position, with no

20  significant discretion or independent judgment.  The IS employees were to merely follow the

21  installation guide, configure, set-up, and troubleshoot Agilysys' software package.  Problems

22  with the software or the need for patchwork for any missing steps in the installation guide are

23  addressed by developers or the site-surveyor, not the IS employees.  In general, once IS

24  employees were sufficiently trained on the software and installation guides in various types

25  of hospitality groups, they were trained to be site surveyors to move into more refined

26  company positions with less manual work and more client development.  The IS position did

27  not require any advanced degree, licensure or state sanctioned certification.  A basic ability

28  to follow the specifications is all that was required to be a successful installer.

14.     During the Class Period, Defendants' normal business hours were 8 a.m. to 5 p.m., Monday through Friday.  Plaintiffs and the IS employees, however, worked beyond these regular hours and days due to the nature of their work and the nature of their hospitality-industry clients' work.  The IS employees were expected to be flexible in relation to the clients' schedule to minimize the interruption of the clients' business which resulted in working odd hours at low impact times to conduct the installation and configuration process. The IS employees worked nights and weekends, and were expected to travel with little advance notice; otherwise, they would be subject to disciplinary action, including termination.  For example, a cruise ship only wanted its Point of Sale ("POS") software installed in the early morning hours after most of its casino operations were minimal.  The same was true for other hotels, resorts and casinos, which would require system installations at low-peak times.  The Plaintiffs reported substantial weekly overtime hours worked.

15.     Furthermore, Plaintiffs contend that they and other IS employees were not permitted to record all of their time worked.

16.     According to Defendants' employee manual, "[e]xempt employees are required to complete a time card on an *exception basis only*" and are "exempt from the overtime provisions of the [FLSA]."  Plaintiffs contend that all IS employees were directed to stop recording the actual hours they worked, and instead to insert the amount of hours they were budgeted to work that day:  "The rule of thumb should be 8 hours budgeted each day onsite."  Plaintiffs were instructed to record 8 hours per any day for billable time to clients, even if the daily work was 9, 10 or more hours of actual work.

17.     The result was that Agilysys did not have any accurate measure of total hours worked necessary to show whether or not, on an hourly basis, it ever satisfied basic salary thresholds for Plaintiffs and/or the Class.  For some IS employees, whose wages started around $16/hour or less, if actual work time were tracked, they did not meet the FLSA requirements because the hourly rate/wages were diluted by overtime hours worked.

## HISTORY OF LITIGATION/PROCEDURAL BACKGROUND

18.     On or about July 5, 2012, Plaintiffs filed the action *Jones, et al.  v.  Agilysys,*

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                                Case No. CV12-3516-SBA

1  *Inc., et al.*, Case No. CV-12-3516, in the U.S.D.C. for the Northern District of California, on

2  behalf of current and former IS employees of Defendants.  Defendants employed IS

3  employees in California, as well as throughout the United States.  Plaintiffs contend that

4  during the relevant Class Periods, the IS employees were misclassified as exempt from the

5  overtime provisions of the FLSA and the applicable state wage and hour laws of California,

6  Nevada, Florida, Texas, Colorado, and North Carolina.  The initial Collective and Class

7  Action Complaint ("Complaint") asserted seven causes of action on behalf of a putative class

8  under the FLSA and six putative state law classes pursuant to FRCP Rule 23 for unpaid

9  overtime.  The California plaintiff, Terrell Jones, also sought to certify six subclasses within

10  the California Class for: (1) failure to pay premium wages for noncompliant meal and rest

11  periods in violation of California Labor Code §§ 226.7 and 512; (2) failure to provide

12  accurate wage statements in violation of California Labor Code §§ 226 and 1174; (3) failure

13  to timely pay wages upon termination in violation of California Labor Code §§ 201-203; (4)

14  failure to reimburse necessary business expenses in violation of California Labor Code §§

15  2802; and (5) unfair competition in violation of California Business & Professions Code §

16  17200, *et seq*.

17       19.     With the issuance of the Summons, the Court issued an Order assigning the

18  matter to the Honorable Donna M. Ryu and setting an Initial Case Management Conference

19  for October 10, 2012.

20       20.     On or about July 6, 2012, Plaintiffs mailed a certified letter to the LWDA

21  providing notice of alleged Labor Code violations pursuant to California Labor Code §

22  2699(f).

23       21.     On or about July 25, 2012, Defendants filed a Declination to Proceed before

24  a Magistrate Judge and Request for Reassignment to a United States District Judge.  In

25  addition, the Parties submitted a Stipulation Extending Time for Defendants to respond or

26  otherwise plead to the Complaint from July 27, 2012 to August 26, 2012.

27       22.     On or about July 27, 2012, the Court issued an Order Reassigning the matter

28  to the Honorable Saundra Brown Armstrong for all further proceedings.

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                    Case No. CV12-3516-SBA

23.    On or about July 30, 2012, the Court issued a Case Management Scheduling Order setting a telephonic Case Management Conference ("CMC") for October 10, 2012.

24.    Without indication from the LWDA that it intended to investigate the alleged violations, on or about August 9, 2012, Plaintiffs, on behalf of themselves and all other similarly situated aggrieved current and former employees of Defendants, filed a First Amended Complaint (the "Operative Complaint") re-asserting the aforementioned claims and adding an eighth cause of action for alleged violations of the PAGA.

25.    On or about August 23, 2012, the Parties filed a Joint Stipulation and Motion to Extend Time to File a Responsive Pleading to the Operative Complaint, which requested that the Court extend Defendants' deadline to file a response to the Operative Complaint from August 25 to September 26.  The request was granted.

26.    Despite their diligent efforts to meet and confer about the scope and substance of the allegations in the Operative Complaint, the Parties required more time to exchange information and to discuss the issues in an effort to avoid unnecessary motion practice.  On or about September 19, 2012, the Parties filed a Joint Motion requesting an additional extension of the deadline for Defendants to respond to the Operative Complaint, as well as a continuance of the CMC.

27.    On or about September 21, 2012, the Court entered an Order extending Defendants' deadline to respond to the Operative Complaint to October 26, and continued the CMC to December 6.

28.    With continued meet and confer discussions, an agreement to mediate the matter by February 2013 was achieved by the parties.  Accordingly, on October 25, 2012, a Stipulation and Joint Motion was filed requesting the Court to stay all proceedings, including the CMC, and the Rule 26 deadlines, and to toll the statute of limitations ("SOL") for Plaintiffs' FLSA claims until 30 days after the completion of mediation.

29.    On or about October 26, 2012, the Court issued an Order (1) staying all proceedings in the action until March 15, 2013; (2) tolling the SOL on Plaintiffs' FLSA claims for the duration of the stay; and (3) continuing the CMC to March 20, 2013.

30.     The Parties appeared before Mark Rudy, an experienced and renowned wage and hour mediator.  Unfortunately, the Parties were unable to reach an agreement by day's end.  As set forth in the next section, a mediator's proposal was issued and accepted by both sides on March 4, 2013.  On March 7, the Parties engaged in a post-mediation conference to discuss issues relating to the preparation of the Agreement, incentive payments for Plaintiffs, multiplier for the California Class, the deadline to file this motion, and the continued tolling of the FLSA SOL.  In that same conference, the parties agreed to enter into a stipulation to continue the CMC, toll the FLSA SOL, and set a deadline to file this motion.

31.     Pursuant to the parties' stipulation, on or about March 12, 2013, the Court issued an Order (1) vacating the March 20 CMC; (2) extending the tolling of the FLSA SOL until 30-days after entry of an order granting final approval of the settlement; and (3) initially setting a May 7 deadline for filing this motion (which was continued to June 6 pursuant to stipulation and order).

32.     With sufficient investigation, research, document analysis and extrapolation of class-wide damages, on or about February 28, 2013, the Parties engaged in serious and informed arms-length negotiations before Mr. Rudy, a respected and experienced wage and hour mediator in San Francisco, California.  Although the matter did not settle on this date, signification progress towards reaching an agreement was accomplished.  On March 1, Mr. Rudy provided the parties with a mediator's proposal, setting forth the principal terms of the Settlement Agreement, which was accepted by the parties on March 4.

33.     On June 6, 2013, Plaintiffs previously filed a motion for preliminary approval of a class settlement.  The motion asked the Court to approve two settlement classes: (1) a national FLSA class and (2) a Rule 23 California Class.  On August 15, 2013, the Court denied Plaintiffs' motion on the grounds that the California settlement class failed to satisfy Rule 23's numerosity requirement.

34.     On or about October 9, 2013, the Parties agreed to enter into an amended class settlement agreement based on a single nationwide FLSA class, and which they present now for preliminary approval.  The proposed settlement is memorialized in the Amended

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                    Case No. CV12-3516-SBA

1    Settlement Agreement presented now for preliminary approval, a true and correct copy of

2    which is attached hereto as Exhibit 1.

3                    **SUMMARY OF PROPOSED SETTLEMENT TERMS**

4            35.      The Parties have agreed (subject to and contingent upon approval of this

5    Court), that this action be settled and compromised for the GSA of $1,478,819.00, which sum

6    includes (a) attorneys' fees in an amount not to exceed 25% of the GSA or rather

7    $369,704.75; (b) litigation costs estimated at $25,000; (c) Class Representative Payment of

8    up to $5,000 for each of the six named Plaintiffs; and (d) claims administration expenses to

9    Rust Consulting, Inc., estimated at $16,500.

10           36.      After all Court-approved deductions, the remaining sum ( "NSA") estimated

11   at $1,037,614.25 will be distributed to all Class Members who return valid and timely Claim

12   Forms/FLSA Consent to Join Forms ("Claim Form").  In addition to the GSA, Defendants

13   will also pay the employer's share of applicable taxes on the portion of the participating

14   Class Member's Settlement Payment allocated to wages.

15           37.      The Settlement Payments to participating Class Members are characterized as

16   67% wages for which an IRS W-2 form will be issued, and 34% as penalties and interest for

17   which an IRS 1099 form will be issued.

18           38.      All unclaimed shares of the NSA by a Class Member will be redistributed

19   proportionately among the Participating Class Members.  No portion of the Settlement will

20   revert to Defendants.

21           39.      Participating (or "Authorized") Class Members will receive their

22   proportionate share of the NSA based upon the number of weeks he or she worked during the

23   relevant Class Period in relation to the number of weeks worked by all members of the Class.

24           40.      With an estimated 12,973 weeks worked by the 127 Class Members, each

25   Participating Class Member can expect to receive an estimated $79.98, less taxes, for each

26   week worked during the Class Period.  Based on the estimated rate, and assuming that all

27   members of the Class participate in the Settlement, if a Class Member worked the entire

28   Class Period, he or she could expect to receive an estimated $15,287.61 less taxes.

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                                    Case No. CV12-3516-SBA

41.     Participating Class Members, (those who return a Claim Form/FLSA Consent to Join form) will release any and all actions, causes of action, grievances, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (including attorneys' fees and costs actually incurred), of whatever character, in law or in equity, known or unknown, asserted, whether in tort, contract, or for violation of any state or federal statute, rule or regulation, including state or federal wage and hour laws, whether for economic damages, non-economic damages, restitution, penalties, or liquidated damages <u>arising out of or related</u> to the claims and facts asserted in the Action including, without limitation, claims based on the allegations in the First Amended Complaint for failure to pay overtime in violation of the FLSA, 29 U.S.C. §§ 201-219.

42.     Class Members can only be bound by the judgment and Release of Claims when he/she returns a Claim Form.

43.     Rust Consulting, Inc., the Claims Administrator selected by the Parties, will conduct a search of the National Change of Address database to update Class Member addresses, and will thereafter mail to each Class Member identified by Defendants' employment records, a Notice of Class Action Settlement ("Notice"), Claim Form/FLSA Consent Form ("Claim Form"), and a pre-printed, postage paid return envelope, (collectively "Notice Packet").

44.     The proposed Notice advises the Class of their rights (1) to participate in the proposed Settlement with the return of a Claim Form, (2) to object to the Settlement or to any of its terms, (3) to dispute the number of weeks worked shown in their Claim Forms upon which their Settlement Payment will be based, and (4) for each of the foregoing actions, the manner and deadline date for doing so.  The Notice also informs the Class of the date of the final fairness hearing.

45.     The Claim Form contains the Class Member's personalized information such as his/her name, address, dates of employment, the number of weeks worked during the Class Period,  and the estimated payment he/she could expect to receive if they returned a signed, dated, and timely Claim Form.

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                    Case No. CV12-3516-SBA

46.     To encourage claim form submissions, the Settlement also provides for a postcard to be mailed 30 days after the initial mailing by the Claims Administrator to all Class members who have not by that date returned a Claim Form to remind them of the deadline date to submit a Claim Form.

## THE SETTLEMENT IS A REASONABLE COMPROMISE OF CLAIMS

47.     The Settlement was reached as a result of the arms'-length negotiations facilitated by an experienced and well-respected mediator.

48.     Through cordial and professional, the settlement negotiations have been, at all times, adversarial and non-collusive in nature.  Continued good faith, but occasionally contentious, negotiations were required to ultimately reach agreement.  While Plaintiffs believe in the merits of their case, they also recognize the inherent risks and uncertainty of litigation and understand the benefit of providing a significant settlement sum now as opposed to risking (i) denial of the FLSA collective action certification; and/or (ii) an unfavorable result on the merits on summary judgment or at trial and/or on an appeal, a process that can take several more years to litigate.

49.     Plaintiffs' claims involve complex and disputed legal issues and fact-specific arguments which the Parties have litigated fiercely since inception of the action.  Plaintiffs firmly believe in the strength of their claims, but Agilysys also has strong defenses to liability.  There are also significant risks to Plaintiffs' ability to maintain conditional certification of a collective action.

50.     The FLSA claims for the alleged failure to pay overtime wages to the Class by instructing them to not report all hours worked would involve representative sampling and testimony of Class Members and of Defendants' management in offices around the country in light of the lack of written evidence to support such claims.

51.     Although Defendants believe Plaintiffs will face several steep hurdles going forward should this matter not resolve, it is also mindful that there are risks and significant expenses associated with proceeding further in the case.

52.     The proposed Settlement is the product of substantial effort by the Parties.

1  As a threshold matter, the factual investigation conducted both before the Action was filed
2  and which continued thereafter was quite robust.  Before the Parties appeared at mediation, a
3  substantial amount of information and documents had been informally exchanged which
4  resulted in sufficient data and information to allow Plaintiffs to extrapolate class-wide
5  damages and to participate in a meaningful mediation.

6        53.     The Parties have thoroughly investigated and evaluated the factual strengths
7  and weaknesses of this case and engaged in sufficient investigation and discovery reflected in
8  the motion and in the paragraphs below to support the Settlement.

9        54.     Based upon information obtained from the Plaintiffs and from other putative
10 Class Members regarding the number of overtime hours they worked, the Classes' blended
11 hourly overtime rate of $37.95, and the 12,973 discrete number of weeks worked by the Class
12 produced by Defendants, Class Counsel estimated the value of each overtime hour to be
13 $492,325.35.  Assuming the Class worked anywhere from five to ten hours of overtime per
14 week, Defendants' liability was estimated to be in the range of $2,461,626.75 to
15 $4,923,253.50.

16       55.     Plaintiffs' estimate of the overtime exposure was subject to rational
17 discounting in light of Defendants' legal argument concerning obstacles to  certification,
18 asserting that recent decisions, such as *Dukes*, would make certification unlikely for
19 Plaintiffs, and their assertion that aggregate overtime hours worked based upon information
20 from Plaintiffs and the other informal interviews was unreliable and inaccurate; further that
21 there were many weeks wherein the IS worked from home and did not accrue overtime; and
22 that Defendants paid Class Members their full salaries even when they were  not on specific
23 assignments; and that the overtime hours fluctuated, with most of them occurring on cruise
24 ships which directed that most of the work be completed outside of ships' operating hours to
25 minimize disruption of their revenue stream.  With regard to the hours worked on cruise
26 ships while in international waters and/or in foreign countries, Defendants vehemently
27 contended that neither state of federal laws would be applied to allow Plaintiffs' claims for
28 overtime worked.

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                          Case No. CV12-3516-SBA

56.     The proposed non-reversionary Settlement of $1,478,819 is 60% to 30%, of the estimated potential liability ranging from $2,461,626.75 to $4,923,253.50, respectively. This range is very reasonable in light of the risks of obtaining an unfavorable decision on certification, summary judgment or trial.

57.     The overall assessment of claim viability, even assuming certification, presented several significant difficulties which included (1) the risk of losing at trial and (2) the lack of willingness to participate by some current employees whose role beyond an absent class member (such as a testifying witness or declarant) would cause them to hesitate to assist in the case for fear, whether real or imagined, of retaliation.

58.     While Plaintiffs' counsel is firmly convinced that there is general accord that the types of work being performed by the Class are now generally accepted to not be exempt task-work, this is not a given and the systems and specialized platforms that Agilysys deploys for its clients could cause a lay jury to find that the work was sufficiently discretionary and required specialized knowledge such that the Class, even certified, could lose and gain nothing at trial.

59.     A fair settlement such as this, which provides a certain payout that accounts for an approximation of work offers a way for Agilysys to avoid costly further litigation and for Class Members, including current employees, to receive certain compensation without attenuated circumstances inherent in the employer-employee relationship.

60.     In the face of these uncertainties, the Parties agreed to a compromise non-reversionary settlement of $1,478,819.00 for the 127 Class Members which will pay an estimated **$79.98** for each week worked by a Class Member during the Class Period.

## DISCOVERY AND INVESTIGATION

61.     Substantial investigation, legal research and interviews with Plaintiffs and other putative Class Members took place prior to the filing of this class action.  Defendants operate multiple offices throughout California and the United States in which it employs IS employees, including Arizona, Florida, Georgia, Maryland, Mississippi, North Dakota, New Jersey, Nevada, New York, Oregon, Pennsylvania, Texas, Virginia, Washington, and West

1    Virginia.  Six class representatives were located and retained to represent the FLSA Class.

2    Due to the numerous states involved, significant legal research had to be performed to

3    determine the applicable exemptions, overtime requirements, available remedies, and statute

4    of limitations ("SOLs") of each state.

5        62.    Plaintiffs, and other putative Class Members, were interviewed to ascertain their

6    duties and method of compensation to determine whether the IS employees fell within the

7    Computer Professional or Administrative exemptions.  Their duties were then compared to the

8    applicable state and federal laws and regulations to determine whether their duties met the

9    respective tests.  In addition, Plaintiffs, and other putative class members, were interviewed to

10   determine the amount of overtime hours they worked and requested to produce documents in their

11   possession which supported their claims.

12       63.    In response, Plaintiffs, as well as other putative class members, produced to

13   Plaintiffs' counsel over 7,000 pages of documents and electronic data which included, among

14   other things: (1) Defendants' employee handbook; (2) written job descriptions of IS employees;

15   (3) timesheets and timecards; (4) emails; (5) policies relating to travel, comp days, recordation of

16   hours and expenses; (6) paycheck stubs; (7) project schedules; (8) installation schedules; (9)

17   project and status reports; (10) site surveys; (11) travel receipts; (12) expense reports; (13)

18   performance reviews; (14) installation or configuration manuals and guides; and (10) a related

19   prior class action lawsuit.  Plaintiffs' counsel painstakingly reviewed each of the documents

20   produced to ensure a complete investigation and with an eye towards successfully proving the

21   allegations contained in the Operative Complaint on a class-wide basis.  This initial workup and

22   acquisition of documents proved crucial in the successful prosecution of this class action.

23       64.    Subsequent to the filing of the Operative Complaint, the Parties engaged in

24   extensive cooperative informal discovery and the exchange of documents and information.  In

25   addition to the documents produced by Plaintiffs, Defendants provided extensive documents and

26   thousands of pages of putative class data to Plaintiffs and Class Counsel to review and analyze.

27   This information included employment data for the entire putative Class, policies and documents

28   relevant to the issues in the litigation, and Plaintiffs' wage statements, expense reports, and

1    personnel files.

2        65.    On September 21, 2012, Defendants produced Plaintiffs' personnel records,

3    which totaled 665 pages.

4        66.    On January 8, 2013, Defendants produced an additional 548 pages of documents

5    consisting of job descriptions for the IS employees and redacted Class data for employees who

6    held IS positions, as well as expense report data, billable hour data, and wage statements of the

7    Plaintiffs.  This information was also provided in three separate MS Excel spreadsheets,

8    containing over 5,500 lines of combined data.

9        67.    On January 17, 2013, after meeting-and-conferring regarding the scope of the

10   putative Class and which job titles encompass the Class, Defendants provided Plaintiffs with an

11   additional 24 pages of documents, comprising of job descriptions and redacted Class data for the

12   IS positions.

13       68.    Also provided to Plaintiffs on January 17, 2013 was a MS Excel spreadsheet

14   made up of 718 lines of data representing: (1) employee ID; (2) employment State; (3) last and

15   original hire dates; (4) seniority date; (5) termination date; (6) status as of 12/26/2012; (7) length

16   of service in weeks; (8) job begin and job end dates; (9) division; (10) location; and (11) job title.

17   Through manipulation of this spreadsheet data, Plaintiffs were able to determine the number of

18   unique employee ID numbers (prospective Class Members), the number of current and former

19   employees, and the number of eligible workweeks through December 2012.

20       69.    On February 20, 2013, Defendants produced 64 more pages of Plaintiffs' time

21   sheets for the May 2011 through September 2011 time period.

22       70.    Plaintiffs were able to use the data provided by Defendants, as well as the

23   information gathered from Plaintiffs, to calculate for the Class Period, the estimated number of

24   workweeks, the average hourly, overtime and double-time rates of pay, and the average hours of

25   overtime worked each week.  This information was then used to create Plaintiffs' mediation

26   damage model and calculate the amount of unpaid overtime wages owed to class members during

27   the Class Period.  All of the information obtained during the investigative and discovery phase,

28   allowed the Parties to prepare for a class-wide damage model and to prepare for a meaningful

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                    Case No. CV12-3516-SBA

1 | mediation on February 28, 2013.

2 | **EXPERIENCE OF COUNSEL**

3 | 71.     Class Counsel, Cohelan, Khoury & Singer has had significant experience in

4 | litigating misclassification, overtime, expense reimbursement, and rest/meal period cases,

5 | and other wage and hour class cases and have obtained certification in these types of cases in

6 | Orange County Superior Court, (before the Hon. David C. Velasquez, and the Hon. Jonathan

7 | Cannon), in the Sacramento Superior Court, (before the Hon. Raymond Cadei), in the United

8 | States District Court for the Southern District of California, (before the Hon. Judge Marilyn

9 | Huff and before the Hon. Janis Sammartino), and in San Diego County Superior Court

10 | (before the Hon. Linda B. Quinn, the Hon. Patricia A. Cowett, Hon. Timothy Taylor, and the

11 | Hon. Steven Denton).

12 | 72.     Likewise, Class Counsel, Bisnar & Chase have had significant experience

13 | litigating misclassification, overtime, expense reimbursement, rest and meal period, and other

14 | wage and hour class cases.

15 | 73.     Defendants' counsel, Francis J. Ortman, III, and Robb D. McFadden of

16 | Seyfarth Shaw also are particularly experienced in wage and hour employment law and class

17 | actions.

18 | 74.     Class Counsel having prosecuted numerous cases on behalf of employees for

19 | FLSA violations are experienced and qualified to evaluate the Class claims and to evaluate

20 | settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses.

21 | **CLASS COUNSELS' FEES REQUEST/CLASS REPRESENTATIVE PAYMENTS**

22 | 75.     Class Counsels' attorneys' fees and litigation costs incurred pursuing the

23 | litigation of this action will also be paid from the GSA.  Class Counsel will file a motion

24 | requesting reimbursement of their litigation expenses and an award of fees (limited to 25% of

25 | the GSA) 15 days prior to the deadline for the Class to file objections.  The motion for

26 | attorneys' fees and costs will detail the hours expended and the litigation expenses advanced.

27 | 76.     Subject to the Court's approval at the time of the final fairness hearing, Class

28 | Counsel will request on behalf of each named Plaintiff the modest sum of $5,000 for their

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                    Case No. CV12-3516-SBA

1   time, effort, risks undertaken for the payment of costs in the event this action had been

2   unsuccessful, stigma upon future employment opportunities for having initiated this action

3   against a former employer, and a general release of all claims related to their employment,

4   which release is broader than the release given by the Class.  The requested Class

5   Representative Payments are fair and reasonable because each was instrumental in this

6   litigation and in achieving the settlement in this case.  Each Plaintiff invested a great deal of

7   personal time and effort into the investigation, prosecution, and the settlement of the case, as

8   set forth in their respective declarations filed concurrently herewith.  The Class

9   Representative Payment of $5,000 each is fair and reasonable.

10                                              **CONCLUSION**

11          77.     Counsel on both sides share the view that this is a fair and reasonable

12   settlement in light of the complexities of the case, the state of the law, and of the

13   uncertainties of certification and litigation.  The opinion of counsel in support of the

14   proposed Settlement is based on a realistic assessment of the strengths and weaknesses of

15   their respective cases, extensive legal and factual research, as well as substantial discovery.

16   The opinion of counsel is also based on an assessment of the risks of proceeding with the

17   litigation through trial and, if a verdict were recovered, through appeal as compared to the

18   certain value of a settlement at this time.  Given the risks inherent in litigation and the

19   defenses asserted, this Settlement is fair, adequate, and reasonable and in the best interests of

20   the class, and should be preliminarily approved.

21          78.     No group or member of the proposed class is discriminated against under the

22   terms of the proposed Settlement.  Nor does the proposed Class Action Settlement Agreement

23   require a bonus to the named Plaintiffs or counsel for the proposed class.  It provides only

24   that counsel for the proposed class may apply to the Court for an award of their attorneys'

25   fees and a reimbursement of their expenses and costs, including the costs of administration,

26   and that the named Plaintiffs may apply for an enhancement award incurred in connection

27   with the prosecution of this action.  The proposed Class Action Settlement Agreement does

28   not condition the settlement on the Court's issuance of any such awards.

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                              Case No. CV12-3516-SBA

79.     In light of all the information provided above, the proposed Settlement reflects an excellent recovery for the Class and is well within the "ballpark" of reasonableness and should be granted preliminary approval.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on this 18th day of October, 2013 in San Diego, California.

/s/ Isam C. Khoury

Isam C. Khoury, Declarant

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                    Case No. CV12-3516-SBA