1  **BISNAR|CHASE LLP**
   Brian D. Chase, (SBN 164109)
2     *bchase@bisnarchase.com*
   Jerusalem F. Beligan, (SBN 211258)
3     *jbeligan@bisnarchase.com*
   1301 Dove Street, Suite 120
4  Newport Beach, California 92660
   Telephone: (949)752-2999/Facsimile: (949)752-2777
5

6  Attorneys for Plaintiffs and the Class

7  *[Additional Counsel listed, next page]*

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11 TERRELL JONES, a California resident;        Case No. CV12-3516 SBA
   MICHAEL JOHNSON, a Florida resident;
12 DERRICK PAIGE, a Texas resident;            **COLLECTIVE ACTION**
   WILFREDO BETANCOURT, a Nevada
13 Resident; YOLANDA McBRAYER, a               **[UNOPPOSED]**
   former Colorado resident; and MICHAEL
14 PIERSON, a North Carolina resident,         **MEMORANDUM OF POINTS AND**
   individually, and on behalf of all others   **AUTHORITIES IN SUPPORT OF MOTION**
15 similarly situated,                          **FOR ORDER GRANTING FINAL**
                                               **APPROVAL OF CLASS ACTION**
16                                             **SETTLEMENT AND ENTERING**
17                     Plaintiffs,             **JUDGMENT**

18         vs.

19
   AGILYSYS, INC., an Ohio corporation;
20 AGILYSYS NV, LLC, a Delaware limited        Date:      May 20, 2014
   liability company; and DOES 1 through 100,  Time:      1:00 p.m.
21 inclusive,                                   Dept:      Courtroom 1 (Fourth Floor)
                                               Judge:     Hon. Saundra B. Armstrong
22                    Defendants.
23

24

25                                             Filed:      July 6, 2012
                                               Trial date: None set
26

27

28

---

Memorandum of Points and Authorities ISO Order Granting
Final Approval of Class Action Settlement and Entering Judgment          Case No. CV12-3516-SBA

**COHELAN KHOURY & SINGER**
Isam C. Khoury, (SBN 128643)
  *Ikhoury@ckslaw.com*
Michael D. Singer, (SBN 115301)
  *msinger@ckslaw.com*
Diana M. Khoury, (SBN 128643)
  *dkhoury@ckslaw.com*
J. Jason Hill, (SBN 179630)
  *jhill@ckslaw.com*
605 "C" Street, Suite 200
San Diego, CA 92101-5305
Telephone: (619) 595-3001 / Facsimile: (619) 595-3000

Attorneys for Plaintiffs and the Class

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 1

    A.    Defendants Agilysys, Inc., and Agilysys NV, LLC ............................................ 1

    B.    Named Plaintiffs ................................................................................................ 2

    C.    Duties and Responsibilities of the IS Employees .............................................. 2

    D.    The Hours Worked by Plaintiffs and the IS Employees ..................................... 3

III.  PROCEDURAL BACKGROUND ..................................................................... 3

IV.   INVESTIGATION AND EXTENT OF DISCOVERY ...................................... 4

V.    SUMMARY OF AMENDED SETTLEMENT AGREEMENT TERMS ........... 4

    A.    Gross Settlement Amount ................................................................................... 4

    B.    Net Settlement Amount ...................................................................................... 4

    C.    Released Claims ................................................................................................. 5

VI.   THE PROPOSED SETTLEMENT IS A REASONABLE COMPROMISE OF

    CLAIMS .............................................................................................................. 5

VII.  DISCUSSION ..................................................................................................... 6

    A.    Settlement of FLSA Collective Action Claims Require Court Approval ............... 6

    B.    Potential Collective Members are Similarly Situated and The Proposed Settlement

        Constitutes a Fair and Reasonable Resolution of A Bona Fide Dispute over FLSA

        Provisions ........................................................................................................... 7

    C.    Preliminary Approval Granted ........................................................................... 8

    D.    Notice to the Class ............................................................................................. 9

    E.    Class Members' Response and Participation Supports Final Approval ............... 10

VIII. THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND

    LITIGATION EXPENSES AND CLASS REPRESENTATIVE PAYMENTS ............. 10

    A.    The Requested Fee Award is Fair and Reasonable Calculated as a Percentage of

        a Common Fund .................................................................................................. 11

i

B.     A Recovery of 25% of the Common Fund Constitutes a Reasonable Fee............ 12

C.     Ninth Circuit Factors for Evaluating the Reasonableness of a Fee Request ........ 13

       1)     The Results Achieved Support the Fee Request ...................................... 14

       2)     The Risks of Litigation, the Skill Required and the Quality of
              Representation ....................................................................................... 14

       3)     The Contingent Nature of the Fee and the Financial Burden Carried by
              Class Counsel ....................................................................................... 16

       4)     Awards in Similar Cases ........................................................................ 18

       5)     The Reaction Of The Class Supports The Fee Request ........................... 19

D.     Class Counsel' Fee Request is Reasonable when Cross Checked Using the
       Lodestar-Multiplier Methodology............................................................... 19

E.     Class Counsel's Hourly Rates Are Reasonable ................................................... 20

F.     Class Counsel's Total Hours are Reasonable....................................................... 21

G.     Class Counsel's Lodestar Exceeds the Requested Fee, Confirming its
       Reasonableness ............................................................................................... 22

H.     The Litigation Expenses Are Reasonable ........................................................... 22

I.     The Class Representative Payments Are Reasonable ........................................... 23

J.     Claims Administration Expenses Should be Approved ....................................... 23

IX.    CONCLUSION ............................................................................................................ 24

1

## TABLE OF AUTHORITIES

2

**Page**

3

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*
  421 U.S. 240 (1975) .................................................................................. 11

4

5

*Blum v. Stenson*
  465 U.S. 886 (1984) .................................................................................. 13

6

7

*Boeing Co. v. Van Gemert*
  444 U.S. 472 (1980) .................................................................................. 11

8

*Buenaventura v. Champion Drywall, Inc. of Nev.*
  2012 WL 1032428 (D. Nev., Mar. 27, 2012) ........................................... 7

9

10

Chun-Hoon v. McKee Foods Corp.
  716 F.Supp.2d 848 .................................................................................... 22

11

12

*Deposit Guar. Nat'l Bank v. Roper*
  445 U.S. 326 (1980) .................................................................................. 12

13

14

*Camden I Condo. Ass'n, Inc. v. Dunkle*
  946 F.2d 768 (11th Cir. 1991) .................................................................. 13

15

16

*Central R. & Banking Co. v. Pettus*
  113 U.S. 116 (1885) .................................................................................. 13

17

18

*Children's Hospital and Med. Center v. Belshe*
  97 Cal. 4th 740 (2002) .............................................................................. 20

19

20

*Flannery v. California Highway Patrol*
  61 Cal. App. 4th 629 (1998)  .................................................................... 20

21

*Florida v. Dunne*
  915 F.2d 542 (9th Cir. 1990) .................................................................... 13

22

23

 *Harris v. Marhoefer*
  24 F.3d 16 (9th Cir. 1994) ........................................................................ 23

24

25

Hensley v. Eckerhart
  461 U.S. 424 (1983) .................................................................................. 14

26

27

*Hoffman-La Roche, Inc. v. Sperling*
  493 U.S. 165 (1989) .................................................................................... 7

28

*Hopson v. Hanesbrands Inc.*
  2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) .................................. 20, 21

iii

*In Re Activision Secs. Litig.*
        723 F.Supp. 1373 (N.D. Cal. 1989) .......................................................... 13

*In re Bluetooth Headset Products Liab. Litig.*
        654 F.3d 935 (9th Cir. 2011)..................................................................... 19

*In Re Businessland Secs. Litig.*
        1991 U.S. Dist. LEXIS 8962 (N.D. Cal. June 14, 1991) .......................... 22

*In re dj Orthopedics, Inc. Secs. Litig.*
        2004 U.S. Dist. LEXIS 11457 (S.D. Cal. June 21, 2004) .......................... 23

*In re Heritage Bond*
        2005 WL 1594389 (C.D. Cal. June 10, 2005) .............................14, 15, 19

*In re Mercury Interactive Sec. Litig.*
        618 F.3d 988 (9th Cir. 2010) ..................................................................... 20

*In re Mfrs. Life Ins. Co. Premium Litig.*
        1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 18, 1998)........................... 16

*In re Omnivision Technologies, Inc.*
        2007 U.S. Dist LEXIS 95616 (N.D. Cal. 2007)......................................... 19

*In Re Oracle Secs. Litig.*
        131 F.R.D. 688 (N.D. Cal. 1990) ............................................................... 13

*In re Portal Software, Inc. Securities Litigation*
        2007 WL 4171201 (N.D. Cal. 2007)........................................................... 22

*In re Quantum Health Resources, Inc. Sec. Litig.*
        962 F. Supp. At 1254 (C.D. Cal. 1997)...................................................... 17

*In re Rite Aid Corp. Sec. Litig.*
        396 F.3d 294 (3d Cir. 2005) ................................................................ 19, 20

*Khanna v. Inter-Con Sec. Sys., Inc.*
        2012 WL 4465558 (E.D. Cal. Sept. 25, 2012)............................................. 7

*Ketchum v. Moses*
        24 Cal.4th 1122 (2001) ...................................................................... 20, 21

*Linney v. Cellular Alaska Partnership*
        151 F.3d 1234 (9th Cir. 1998) ................................................................... 14

Memorandum of Points and Authorities ISO Order Granting
Final Approval of Class Action Settlement and Entering Judgment          Case No. CV12-3516-SBA

*Lynn's Food Stores, Inc. v. United States*
    679 F. 2d 1350 (11th Cir. 1982) .......................................................... 6, 7

*Margolin v. Regional Planning Commission*
    34 Cal.App.3d 999 (1982) ..................................................................... 20

*Miles v. Ruby Tuesday, Inc.*
    799 F. Supp. 2d 618 (E.D. Va 2011) ....................................................... 7

*Mills v. Auto-Lite Co.*
    396 U.S. 375 (1970) .............................................................................. 11

*Moore v. Jas. H. Matthews & Co.*
    682 F.2d 830 (9th Cir. 1982) ................................................................. 21

*Muehler v. Land O'Lakes, Inc.*
    617 F.Supp. 1370 (D. Minn. 1985) ........................................................ 16

*Nat'l Rural Telecomms. Coop. V. DIRECTV, Inc.*
    221 F.R.D. 523, 529 (C.D. Cal. 2004) ................................................... 19

*Norman v. Housing Auth.*
    836 F.2d 1292, 1306 (11th Cir. 1988) ................................................... 22

*Officers for Justice v. Civil Serv. Comm'n*
    459 U.S. 1217 (1983).............................................................................. 14

*Paul, Johnson, Alston & Hunt v. Graulty*
    886 F.2d 268 (9th Cir. 1989) ........................................................... 11, 12

*Powers v. Centennial Communications Corp.*
    679 F.Supp.2d 918 (N.D. Ind. 2009) ............................................... 13, 20

*PLCM Group, Inc. v. Drexler*
    22 Cal. 4th 1084 (2000) ........................................................................ 21

*Sanchez v. Sephora USA, Inc., No.*
    2012 WL 2945753 (N.D. Cal. July 18, 2012)........................................... 7

*Serrano v. Priest*
    32 Cal.3d 621 (1982) ............................................................................ 21

*Six (6) Mexican Workers v. Arizona Citrus Growers*
    904 F.2d 1301 (1990) ............................................................................ 12

*Skelton v. General Motors Corp.*
    860 F. 2d 250  (7th Cir. 1988) ................................................................. 17

*Sprague v. Ticonic Nat'l Bank*
    307 U.S. 161 (1939) ........................................................................ 13

*Trustees v. Greenough*
    105 U.S. 527 (1881) ........................................................................ 13

*Vasquez v. Coast Valley Roofing, Inc*.
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ..................................................... 7

*Vizcaino v. Microsoft Corp*.
    290 F.3d 1043 (9th Cir. 2002) ................................................. 13, 19, 20

*West v. Circle K Stores, Inc.,*
    2006 U.S. Dist. LEXIS 76558 (E.D. Cal. Oct. 19, 2006) ......................... 22

*Williams v. MGM-Pathe Communications*
    129 F.3d, 1026 (9th Cir. 1997) ......................................................... 12, 13

*Wooldridge v. Marlene Industries Corp.*
    898 F.2d 1169 (6th Cir. 1990) ......................................................... 22

## STATUTES AND REGULATIONS

**Page**

*Federal Rules of Civil Procedure*
    Rule 23 ................................................................................... 1, 6

## MISCELLANEOUS AUTHORITIES

Alba Conte, Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002)
    § 14.6.......................................................................................... 12

vi

Memorandum of Points and Authorities ISO Order Granting
Final Approval of Class Action Settlement and Entering Judgment    Case No. CV12-3516-SBA

## I.       INTRODUCTION

With this unopposed[1] Motion Plaintiffs Terrell Jones, Michael Johnson, Derrick Paige, Wilfredo Betancourt, Yolanda McBrayer, and Michael Pierson ("Plaintiffs") seek final approval of a collective action settlement for Plaintiffs and the Class of individuals employed by Defendants Agilysys, Inc., and Agilysys NV, LLC. ("Defendants" or "Agilysys") as Installation Specialists (the "IS" employees or positions), who were misclassified as "exempt" from the requirements of overtime wages under the Federal Labor Standards Act ("FLSA") at any time during the period, July 5, 2009 through March 4, 2013, ("Class Period").  (Declaration of Isam C. Khoury ("Khoury Decl."), ¶9.)

This wage and hour class action and collective action was filed pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 23[2] and the FLSA.  The FLSA collective action involves a total of 125 current and former IS employees.  On final approval, the proposed non-reversionary Settlement for $1,478,819 will fully resolve all issues.  ("Khoury Decl.", ¶10.)

## II.      BACKGROUND

### A.      Defendants Agilysys, Inc., and Agilysys NV, LLC

Defendants are reputed to be the leading developer and marketer of proprietary enterprise software, services and solutions to the hospitality and retail industries.  Agilysys services casinos, resorts, hotels, food service venues, stadiums, cruise lines, grocery stores, convenient stores, general and specialty retail business and partners.  Agilysys is a large multi-national corporation with locations nationwide, and develops customized software suites for large clients for Point-of-Sale ("POS") revenue handling.  To develop a client plan, other employees engage in "site surveys" that

---

[1] Defendants have reviewed this motion, and will not oppose it.  Notwithstanding, Defendants are not agreeing with any factual allegations or legal arguments regarding the substance of this action contained in Plaintiffs' Motion, and may assert alternate factual allegations or legal arguments in the event this case is not resolved through settlement.

[2] On June 6, 2013, Plaintiffs filed their first preliminary approval motion seeking approval of a Rule 23 California Class and a national FLSA Class.  [Docket No. 26.] On August 15, 2013, the Court denied Plaintiffs' motion on the grounds that the California settlement class failed to satisfy Rule 23's numerosity requirement.  [Docket No. 27.]  On or about October 9, 2013, the Parties entered into the Amended Settlement Agreement based on a single nationwide FLSA class.  On October 16, 2013, Plaintiffs filed renewed Motion for Order Granting Preliminary Approval, which was preliminary approved by the Court's Order filed on January 10, 2014, as amended on January 21, 2014. [Docket Nos. 30, 33, 39.]

result in a detailed and pre-packaged plan, custom suited for the client's business operations.  Once the client purchases the software packet, it includes all necessary steps, including hardware, system, network and computer upgrades necessary to install Agilysys' proprietary POS software and hardware, with numerous step-by-step "Installation and Upgrade Guides" which detail virtually every aspect of the installation process to be followed by the IS employees.  (Khoury Decl., ¶11.)

### B.    Named Plaintiffs

Plaintiffs are former IS employees of Agilysys whose duties entailed the installation, configuration, troubleshooting and  maintenance of pre-packaged specialized software sold by Defendants to large clients in the hospitality industry (i.e., casinos, hotels, cruise lines, etc.). (Khoury Decl., ¶12.)

### C.    Duties and Responsibilities of the IS Employees

Plaintiffs' duties and responsibilities were manual, routine, and repetitive.  Their job was labor intensive and pre-determined by step-by-step "Installation Guides."  For those clients who only require software installation, the IS employees literally point, click and read the instructions to download and install software.  Occasionally, the site surveyor misses something, like the need for an operating system upgrade for the Agilysys software to work properly, which then gets re-submitted and included in the installation.  The IS employees do not engage in any selection of software, hardware, system or application for Agilysys' clients as this is all done by the sales and site surveyors.  At its core, the IS employees are a technician position, with no significant discretion or independent judgment.  IS employees merely follow the installation guide, configure, set-up, and troubleshoot Agilysys' software package.  Problems with the software or the need for patchwork for any missing steps in the installation guide are addressed by developers or the site-surveyor, not the IS employees.  Once IS employees were sufficiently trained on the software and installation guides in various types of hospitality groups, they were trained to be site surveyors to move into more refined company positions with less manual work and more client development.  The IS position required no advanced degree, licensure or state sanctioned certification.  A basic ability to follow the specifications is all that had to be a successful installer.  (Khoury Decl., ¶13.)

///

Page 2
Memorandum of Points and Authorities ISO Order Granting
Final Approval of Class Action Settlement and Entering Judgment          Case No. CV12-3516-SBA

1

D.     The Hours Worked by Plaintiffs and the IS Employees

2          During the Class Period, Defendants' normal business hours were 8 a.m. to 5 p.m.,

3    Monday through Friday.  Plaintiffs and the IS employees, however, worked beyond these regular

4    hours and days due to their work and the nature of their hospitality-industry clients' work.  The IS

5    employees were expected to be flexible in relation to the clients' schedule to minimize the

6    interruption of the clients' business which resulted in working odd hours at low impact times to

7    conduct the installation and configuration process.  The IS employees worked nights and weekends,

8    and were expected to travel with little advance notice; otherwise, they would be subject to

9    disciplinary action, including termination.  A cruise ship, for example, only wanted its POS software

10   installed in the early morning hours during which its casino operations were minimal impacted.  The

11   same was true for other hotels, resorts and casinos, which would require system installations at low-

12   peak times.  Plaintiffs reported substantial weekly overtime hours worked.  (Khoury Decl., ¶14.)

13         Plaintiffs contend they and other IS employees could not record all of their time worked.

14   (Khoury Decl., ¶15.)  According to Defendants' employee manual, "[e]xempt employees are

15   required to complete a time card on an *exception basis only*" and are "exempt from the overtime

16   provisions of the [FLSA]."  Plaintiffs contend all IS employees were directed to stop recording the

17   actual hours they worked, and instead to insert the hours they were budgeted to work that day:  "The

18   rule of thumb should be 8 hours budgeted each day onsite."  Plaintiffs were instructed to record 8

19   hours per any day for billable time to clients, even if the daily work was 9, 10 or more hours of

20   actual work.  (Khoury Decl., ¶16.)  The result was that Agilysys had no accurate measure of total

21   hours worked necessary to show whether, on an hourly basis, it ever satisfied basic salary thresholds

22   for Plaintiffs and/or the Class.  For some IS employees, whose wages started around $16/hour or

23   less, if actual work time were tracked, they did not meet the FLSA requirements because the hourly

24   rate/wages were diluted by overtime hours worked.  (Khoury Decl., ¶17.)

25   III.    PROCEDURAL BACKGROUND

26         The litigation history and procedural background are detailed in the Khoury Declaration at

27   paragraphs 18 through 34.

28   ///

Page 3

IV.     INVESTIGATION AND EXTENT OF DISCOVERY

     The investigation and the discovery conducted, and stage of the proceedings support the proposed Settlement.  The investigation and discovery conducted are in the Khoury Declaration at paragraphs 35 and 44.

V.      SUMMARY OF AMENDED SETTLEMENT AGREEMENT TERMS

     **A.**     **Gross Settlement Amount**.  Subject to Court approval, Plaintiffs and the Class settled their FLSA claims against Defendants for the non-reversionary Gross Settlement Amount ("GSA") of $1,478,819.00,[3] which sum includes (a) attorneys' fees of up to 25% of the GSA or rather $369,704.75; (b) litigation costs of $21,256.51; (c) Class Representative Payments of up to $5,000 to each of the six named Plaintiffs; and (d) claims administration expenses to Rust Consulting, Inc., of $19,125.80.  (Khoury Decl., ¶45.)

     **B.**     **Net Settlement Amount**.  After all Court-approved deductions, the remaining sum, the Net Settlement Amount ("NSA") estimated at $1,038,731.94 will be entirely distributed proportionally to Class Members who have returned Claim Forms/FLSA Consent to Join Forms, ("Participating Class Members").  Participating Class Members will receive a share of the NSA based upon the number of weeks he or she worked during the Class Period in relation to the number of weeks worked by all Participating Class Members.  With a NSA of $1,038,731.94 divided by the aggregate number of weeks worked by Participating Class Members, Participating Class Members can expect to receive an estimated gross amount of $89.15 for each week worked during the Class Period.  (Khoury Decl., ¶ 46.)  Should a Class Member not return a Claim Form, his/her share of the NSA will be proportionately distributed among the Participating Class Members.  No portion of the Settlement will revert to Defendants.[4]  (Khoury Decl., ¶47.)

---

[3]  In addition to the GSA, Defendants will pay the employer's share of payroll taxes on the portion of the Participating Class Member's Settlement Payment allocated as wages.  The Settlement Payments are characterized as 67% wages (for which an IRS W-2 form will be issued), and as 34% penalties and interest (for which an IRS 1099 form will be issued).

[4]  With respect to monies represented by uncashed checks, the Settlement provides for a void date of 120 days after the checks are mailed to the Class.  If checks are not cashed by the 90th day after the initial mailing, a letter will be sent to the Participating Class Member to advise that the check will soon become void and to remind each to cash the check.  The administrator will offer to replace the check if it is lost.  If a check remains uncashed after the 30 day period, the funds represented by uncashed checks and any sums arising due to a reversal of employee taxes will be

**C.** **Released Claims**.  Participating Class Members, (only those who return a Claim Form/FLSA Consent to Join form) will release any and all actions, causes of action, grievances, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (including attorneys' fees and costs incurred), of whatever character, in law or in equity, known or unknown, asserted, whether in tort, contract, or for violation of any state or federal statute, rule or regulation, including state or federal wage and hour laws, whether for economic damages, non-economic damages, restitution, penalties, or liquidated damages *arising out of or related* to the claims and facts asserted including, without limitation, claims based on the allegations in the First Amended Complaint ("FAC").  ("Khoury Decl.", ¶48.)

## VI.     THE PROPOSED SETTLEMENT IS A REASONABLE COMPROMISE OF CLAIMS.

While Plaintiffs believe in the merits of their case, they also recognize the inherent risks and uncertainty of litigation and understand the benefit of providing a significant settlement sum now as opposed to risking (i) denial of the FLSA collective action certification; and/or (ii) an unfavorable result on the merits on summary judgment, trial and/or on an appeal, a process that can take several more years to litigate.  (Khoury Decl., ¶49.)

Plaintiffs' claims involve complex and disputed legal issues and fact-specific arguments which the Parties litigated fiercely since inception of the action.  Plaintiffs firmly believe in the strength of their claims, but Agilysys also has strong defenses to liability.  There are also risks to Plaintiffs' ability to maintain conditional certification of a collective action.  (Khoury Decl., ¶50.)

The FLSA claim for the alleged failure to pay overtime wages to the Class by instructing them to not report all hours worked would involve representative sampling and testimony of Class Members and of Defendants' management in offices around the country due to the complete lack of time records.  (Khoury Decl., ¶51.)

Although Defendants believe Plaintiffs will face several steep hurdles going forward should this matter not resolve, Agilysys is also mindful there are risks and significant expenses

forwarded to the Workplace Fairness, (www.workplacefairness.org), a non-profit organization working to preserve and promote employee rights, nationally and in all 50 states.  (Docket No. 30-3: Amended Settlement Agreement, ¶ III.G.11.)

Memorandum of Points and Authorities ISO Order Granting
Final Approval of Class Action Settlement and Entering Judgment                    Case No. CV12-3516-SBA

1   associated with proceeding further.  (Khoury Decl., ¶52.)

2        Based upon information obtained from the Plaintiffs and from other putative Class

3   Members through the informal interview process regarding the number of overtime hours they

4   worked, the Classes' blended hourly overtime rate of $37.95, and the 12,973 discrete number of

5   weeks worked by the Class produced by Defendants, Class Counsel estimated the value of each

6   overtime hour to be $492,325.35.  (Khoury Decl., ¶53.)  Assuming the Class worked five to ten

7   hours of overtime per week, Defendants' liability was estimated to be in the range of $2,461,626.75

8   to $4,923,253.50.  *Id.*

9        Plaintiffs' estimate of the overtime exposure was subject to rational discounting in light of

10  the following factors: (1) Defendants' legal argument concerning obstacles to conditional

11  certification under the FLSA; (2) Defendants' assertion that the aggregate overtime hours worked

12  based upon information provided by Plaintiffs and other Class Members is unreliable and

13  inaccurate; (3) Defendants' contention there were weeks during which IS employees did not work

14  and yet were paid their full salaries;  and (4) Defendants' contention that some overtime hours were

15  worked on cruise ships while in international waters and/or in foreign countries.  Defendants

16  vehemently contend that neither state nor federal laws would allow Plaintiffs to recover damages for

17  overtime hours worked in foreign territory.  (Khoury Decl., ¶54.)

18       The proposed non-reversionary Settlement of $1,478,819 is 60% to 30%, of the estimated

19  potential liability ranging from $2,461,626.75 to $4,923,253.50, respectively.  Class Counsel

20  submits this range is very reasonable in light of the risks of obtaining an unfavorable decision on

21  certification, summary judgment or trial.  (See, Order Granting Preliminary Approval filed January

22  10, 2014, Docket No. 33; Khoury Decl., ¶55.)

23  **VII.    DISCUSSION**

24       **A.    Settlement of FLSA Collective Action Claims Require Court Approval.**

25       Settlements of private collective action claims under FLSA require court approval.

26  *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1353 (11th Cir. 1982).  Although it is not

27  entirely clear that preliminary approval of a proposed FLSA settlement is required as with a Federal

28  Rules of Civil Procedure, Rule 23 class action, the Court may nonetheless conditionally certify an

1    FLSA suit as a collective action so that "similarly-situated" employees receive notice of the action

2    and the proposed settlement. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (noting

3    the FLSA requires courts to provide potential plaintiffs' "accurate and timely notice concerning the

4    pendency of the collective action, so that they can make informed decisions about whether to

5    participate."); *see also, Vasquez v. Coast Valley Roofing, Inc*., 670 F. Supp. 2d 1114, 1124 (E.D.

6    Cal. 2009) ("Subject to final approval at a later date, conditional certification of a settlement class

7    under the FLSA is appropriate.").

8        The first step in the approval process is the "notice stage" at which time the district court

9    assesses whether potential class members should be notified of the opportunity to opt-in to the

10   action. *Buenaventura v. Champion Drywall, Inc. of Nev*., No. 2:10-cv 00377-LDG (RJJ), 2012 WL

11   1032428, at *8 (D. Nev., Mar. 27, 2012.)   The next step in the approval process entails a

12   preliminary determination that the settlement constitutes a "fair and reasonable resolution of a bona

13   fide dispute over FLSA provisions." *Lynn's Food Stores, Inc., supra,* 679 F. 2d at 1353.  "[I]f a

14   settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of

15   back wages that are actually in dispute, … the court may approve the settlement 'in order to promote

16   the policy of encouraging settlement of litigation.'"  *Id.* at 1354.  "[T]he reason judicial approval is

17   required for FLSA settlements is to ensure that a settlement of an FLSA claim does not undermine

18   the statute's terms or purposes." *Miles v. Ruby Tuesday, Inc.*, 799 F. Supp. 2d 618, 622-23 (E.D. Va

19   2011).  "Among the factors relevant to this determination are the course of the negotiations, the

20   existence of any factual or legal questions that place the outcome of the litigation in doubt, the

21   benefits of immediate recovery balanced against litigation, and the parties' belief the settlement is

22   fair." *Khanna v. Inter-Con Sec. Sys., Inc.,* No. CIV S-09-2214 KJM GGH, 2012 WL 4465558, *11

23   (E.D. Cal. Sept. 25, 2012).

24          **B.     Potential Collective Members are Similarly Situated and The Proposed
                     Settlement Constitutes a Fair and Reasonable Resolution of A Bona Fide
25                   Dispute over FLSA Provisions.**

26        This Court determined the potential collective members were "similarly situated" within

27   the meaning of the FLSA for conditional certification, citing to *Sanchez v. Sephora USA, Inc., No*.

28   C 11-3396 SBA, 2012 WL 2945753, at *3 (N.D. Cal. July 18, 2012), and based that determination

upon the allegations of the First Amended Complaint [Docket No. 9], the Khoury Declaration [Docket No. 26-2] and the Named Plaintiffs' declarations [Docket Nos. 26-11 through 26-16] filed on June 6, 2013, in support Plaintiffs' preliminary approval motion.[5]  (Khoury Decl., ¶56.)  The Court determined that Plaintiffs had adequately demonstrated the potential collective action members were subject to the same policy that resulted in Agilysys' failure to pay them wages to which they were lawfully entitled under the FLSA.[6]  (Khoury Decl., ¶57.)  The Court also found "the proposed Settlement constitutes a fair and reasonable resolution of a bona fide dispute" regarding whether back wages were owed based upon the record presented through the time of preliminary approval.[7]  The Court stated:

> "The settlement resulted from arms-length, non-collusive negotiations overseen by a neutral mediator after the parties had exchanged a substantial amount of documents and information.  The non-reversionary settlement constitutes 30% to 60% of recoverable damages, and affords the 127 putative Class Members a tangible monetary benefit.  In particular, Plaintiffs estimate that each member should receive $79.98 (before taxes) for each week worked during the Class Period.  An employee who worked during the entire Class Period is thus anticipated to receive a gross amount of approximately $15,287.61.  In view of Defendants' continuing denial of liability and assertion that it would have vigorously defended the action had Plaintiffs litigated further, the Court finds that the settlement represents a reasonable result, particularly in light of the risks and delay inherent in further prosecution of the action.

(Docket No. 33.)

### C.   Preliminary Approval Granted.

In granting preliminary approval of the proposed Settlement on January 10, 2014, the Court approved the proposed Class Notice, subject to its requested modifications, appointed the six named Plaintiffs as Class Representatives, and appointed Bisnar|Chase and Cohelan Khoury & Singer as Class Counsel, and appointed Rust Consulting, Inc., ("Rust") as the administrator to administer the notice and opt-in claims process.  (Khoury Decl., ¶58)

///

---

[5]  Order Denying Preliminary Approval, Section II.A, [Docket No. 27]; and incorporated the finding in its subsequent Order Granting Preliminary Approval, Section II.B, [Docket No. 33].

[6]  Order Denying Plaintiffs' Motion For Order Granting Preliminary Approval. [Docket No. 27]

[7]  Docket No. 27; Order Granting Plaintiffs' Motion for Preliminary Approval.  [Docket No. 33.]

1      **D**.    **Notice to the Class.**

2      On receipt of the Class list from Defendants, Rust conducted a National Change of

3  Address database search to update Class Member addresses.  (Declaration of Stacy Roe ("Roe

4  Decl.,") ¶¶7, 8; Khoury Decl., ¶59.)  On January 31, 2014, Rust mailed the Court-approved Notice

5  of Class Action Settlement ("Notice"), Claim Form/FLSA Consent To Join Form, and a pre-printed,

6  postage paid return envelope (collectively "Class Notice") to 129[8] members of the Class.  (Roe

7  Decl., ¶9, Exh. A; Khoury Decl., ¶60.)

8      The Notice informed the Class of the material terms of the Settlement (i.e., the non-

9  reversionary nature of the settlement funds and the formula for distribution of the settlement

10  monies), their rights to participate in the Settlement by choosing to opt-in with the return of a signed

11  Claim Form, to object to the Settlement, and the procedures and timing for doing each act.  The

12  Notice also provided the date, time, and place scheduled for the Final Approval Hearing and

13  instructions if a Class Member wished to be heard at the time of the hearing.  (Roe Decl., Exh. A –

14  Class Notice, Khoury Decl., ¶61.)  The Notice further informed the Class of the claims to be

15  released in exchange for a share of the proposed Settlement should they return a Claim Form.  (*Id.*)

16      The accompanying Claim Form included the Class Member's individualized information

17  upon which their share of the Settlement would be calculated, i.e., the number of weeks worked

18  during the Class Period, and based thereon, the estimated amount each could expect to receive if

19  he/she opted in to the Settlement.  (Khoury Decl., ¶62; Roe Decl., ¶Exh. A – Claim Form.)

20      Upon the return of undelivered Notice and Claim Form packets, Rust performed skip-

21  traces and re-mailed the Notice and Claim Form packets to updated addresses.  (Roe Decl., ¶12.)

22  Regarding Class Members for whom Rust could not locate valid addresses, Class Counsel

23  independently obtained the services of an investigator who successfully located these Class

24  Members.  (Khoury Decl., ¶63; Roe Decl., ¶12.)

25      On March 10, 2014, Rust mailed a postcard to 55 members of the Class–who had not by

26  that date returned a Claim Form--and provided its toll-free number if the Class Member needed to

27  _____

28  [8]  It was subsequently determined that four members to whom a Class Notice was sent were not
members of the Class in that the weeks previously identified for them were outside the class period.
(Roe Decl., ¶17.)

1  request another Class Notice be mailed to them.  (Khoury Decl., ¶64; Roe Decl., ¶10, Exh. B –

2  Postcard.)

3         **E.**      **Class Members' Response and Participation Supports Final Approval.**

4          The Class has responded favorably to the proposed Settlement, with **86%** of the Class,

5  (107 of 125), choosing to participate in the Settlement. The Claims process included the successful

6  mailing of the Notice and Claim Form/FLSA Consent to Join Form to *all members of the Class*, a

7  reminder postcard, and Class Counsels' response to numerous Class Member calls during the claims

8  period.  (Khoury Decl., ¶65; Roe Decl., ¶18.)  These 107 Participating Class Members represent

9  **90%** of all weeks worked by the Class, and claim $934,858.75 before redistribution of the claimed

10  shares of the NSA.  (Khoury Decl., ¶66; Roe Decl., ¶19.)  At the weekly pay rate of **$89.15**, these

11  Participating Class Members will receive an average payment of **$9,707.78**, and the highest

12  payment estimated at **$28,309.90**.  (Khoury Decl., ¶67; Roe Decl., ¶21.)

13          Moreover, not a single objection was filed, served on the administrator, or on Plaintiffs'

14  Counsel.  (Khoury Decl., ¶68; Roe Decl., ¶16.)  Plaintiffs therefore submit that the exceptionally

15  high participation rate, coupled with the lack of a single objection, demonstrates the Class'

16  acceptance of the Settlement as one which is fair, adequate and reasonable and consistent with this

17  Court's finding, i.e., "The Court finds that the settlement represents a reasonable result, particularly

18  in light of the risks and delay inherent in further prosecution of the action."  [Docket No. 33.]  In

19  light of all the information provided above, the proposed Settlement should be granted final

20  approval.  (Khoury Decl., ¶69.)

21  **VIII.**    **THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND**
             **LITIGATION EXPENSES AND CLASS REPRESENTATIVE PAYMENTS.**

22

23          Under the Settlement, Class Counsel now respectfully moves for an award of attorneys'

24  fees for $369,704.75, or rather 25% of the GSA common fund, litigation costs of $21,256.51

25  originally estimated to be $25,000, Class Representative Payments of $5,000 to each of the six

26  named Plaintiffs, and administration expenses of $19,125.80 to Rust, all as approved by this Court.

27  Each of these sums is fair and reasonable, Defendants do not oppose these requests, and not a single

28  member of the Class objected to these requests.  (Khoury Decl., ¶70.)

1    With the guiding principle that early class action settlements are favored and may not

2    diminish an award of attorneys' fees Class Counsel submits the fee request is fair and reasonable in

3    light of the benefits of providing back pay to the Class for all hours worked and of ensuring future

4    benefits for proper compliance with the FLSA, the substantial hours and efforts expended by Class

5    Counsel, the litigation risks and complexity of the case, the experience of counsel, and the fees

6    commonly awarded in cases of this type.

7        **A.**    **The Requested Fee Award is Fair and Reasonable Calculated as a Percentage**
         **of a Common Fund.**
8

9    The Supreme Court has consistently recognized that "a litigant or lawyer who recovers a

10   fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's

11   fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Auto-*

12   *Lite Co.,* 396 U.S. 375, 392-93 (1970).  The common fund doctrine is a well-recognized exception

13   to the general American rule that a litigant must bear his or her own attorney's fees.  *Alyeska*

14   *Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-58 (1975).

15   The Ninth Circuit has held that the common fund doctrine applies when:  (1) the class of

16   beneficiaries is sufficiently identifiable; (2) the benefits can be accurately traced; and, (3) the fee

17   can be shifted with some exactitude to those benefitting.  *Paul, Johnson, Alston & Hunt v. Graulty*,

18   886 F.2d 268, 271 (9th Cir. 1989).  These criteria are easily met when each member of the class has

19   an "undisputed and mathematically ascertainable claim" to part of a lump-sum settlement recovered

20   on his behalf.  *Id*. at 271, *citing Boeing*, 444 U.S. at 479.

21   Under the three factors set forth in *Paul, Johnson, Alston & Hunt*, the common fund

22   doctrine applies in this case.  First, the class of beneficiaries is identifiable.  The Parties have

23   identified the 125-member Class by reviewing Defendants' employment records, and successfully

24   mailing to each, the Court-approved Class Notice.  Second, the benefits are easily traceable.  The

25   benefits consist entirely of monetary payments to Participating Class Members upon final approval

26   of the Settlement.  Each Class Member has an "undisputed and mathematically ascertainable claim"

27   to a share of the Settlement based on the number of weeks he or she worked for Defendants during

28   the Class Period.  Third, the fee can be shifted with exactitude since Class Counsel is claiming a

1    specific, lump-sum percentage of the GSA.

2            Historically, attorneys' fee awards have ranged from 20% to 50% of the total settlement,

3    depending on the circumstances of the case.  *Newberg on Class Actions*, 4th Ed. 2002, § 14.6, p.

4    550.  However, the Ninth Circuit established a "benchmark" fee of 25% in common fund cases.  *Six*

5    *Mexican Workers*, 904 F.2d at 1311; *Williams v. MGM-Pathe Communications Co.*, 129 F.3d at

6    1027; *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272.  The district court has the discretion to adjust

7    the 25% benchmark upward or downward, but such an adjustment is warranted only in "unusual

8    circumstances."  *Id*. at 272.

9            In this case, there are no "unusual circumstances" to warrant a downward departure from

10   the benchmark 25% fee.  First, Class Counsels' expertise in class actions  weighed heavily in

11   negotiating and providing  an excellent benefit to the Class relatively early in this litigation.  Upon

12   final approval, Participating Class Members will receive an substantial recoveries. Given the

13   complexities and uncertainties of this collective action, and for obtaining a relatively early

14   settlement, a downward deviation from the 25% benchmark would be unwarranted.  "Indeed, one

15   purpose of the percentage method is to encourage early settlements by not penalizing efficient

16   counsel, ensuring that competent counsel continue to be willing to undertake risky, complex, and

17   novel litigation."  Manual for Complex Litigation (Fourth), § 14.121, p. 212.

18           Second, this is not a case where a substantial settlement and a recovery of a large

19   attorneys' fee was a foregone conclusion.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326,

20   338-339 (1980) (recognizing the importance of a financial incentive to entice qualified attorneys to

21   devote their time to complex, time-consuming cases in which they risk nonpayment).  In light of the

22   risks of loss at any stage of this litigation recovery for the Class, much less attorneys' fees, was

23   never a foregone conclusion.

24           **B.      A Recovery of 25% of the Common Fund Constitutes a Reasonable Fee.**

25           Under the common fund doctrine, Courts typically award attorneys' fees based on a

26   percentage of the total settlement.  As the Ninth Circuit wrote in *Six Mexican Workers v. Arizona*

27   *Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990), "[a]lthough statutory awards of attorneys' fees are

28   subject to 'lodestar' calculation procedures, a reasonable fee under the common fund doctrine is

1   calculated as a percentage of the recovery." *Id*. at 1311.  Every Supreme Court case that has

2   considered the award of attorneys' fees under the common fund doctrine has determined those fees

3   as a percentage of the recovery.  *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773

4   (11th Cir. 1991), *citing Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (noting the percentage of

5   recovery method is the appropriate method to award attorney's fees in common fund cases);

6   *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Central R. & Banking Co. v. Pettus,* 113 U.S.

7   116, 128 (1885); *Trustees v. Greenough*, 105 U.S. 527, 532 (1881).

8           District courts in the Ninth Circuit have the discretion to use either the percentage of the

9   fund or the lodestar method to calculate attorney's fees.  *Williams v. MGM-Pathe Communications*,

10   129 F.3d, 1026, 1027 (9th Cir. 1997).  The Ninth Circuit has recognized a "ground swell of support

11   for mandating a percentage-of-the-fund approach in common fund cases."  *Florida v. Dunne*, 915

12   F.2d 542, 545 (9th Cir. 1990).

13           District Courts in California have held the percentage of the fund method is far preferable

14   to the lodestar method because: (1) it aligns the interests of Class Counsel and the Class; (2) it

15   encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable,

16   settlement; and, (3) it reduces the demands on judicial resources.  *In Re Oracle Secs. Litig*., 131

17   F.R.D. 688, 689 (N.D. Cal. 1990) (Walker, J.) (noting the lodestar method has been "thoroughly

18   discredited by experience"); *In Re Activision Secs. Litig*., 723 F.Supp. 1373, 1375, 1378-79 (N.D.

19   Cal. 1989) (Patel, J.).

20           **C.       Ninth Circuit Factors for Evaluating the Reasonableness of a Fee Request.**

21           Whether the Court uses the percentage approach or the lodestar method, the main inquiry

22   is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

23   The Ninth Circuit has articulated five factors as pertinent criteria for evaluating the reasonableness

24   of a fee request:  (1) the results achieved; (2) the risk of litigation; (3) the skill required and the

25   quality of the work; (4) the contingent nature of the fee and the financial burden carried by the

26   Plaintiffs; and (5) awards made in similar cases.  *See Vizcaino v. Microsoft Corp*., 290 F.3d 1043,

27   1048-50 (9th Cir. 2002).  Where the district court departs from the 25% benchmark, an explanation

28   is necessary.  *Powers*, 229 F. 3d at 1256-1257.  Consideration of each factor in this matter supports

approval of the requested attorneys' fees.

### 1)   The Results Achieved Support the Fee Request.

There is little question that the result achieved was excellent in the face of the uncertainties associated with the claims raised by this Nationwide collective action.  The most critical factor to be considered in granting a fee award is the success obtained.  *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475 (RCx), 2005 U.S. Dist. LEXIS 13627, at *27 (C.D. Cal. June 10, 2005) (*citing Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

As noted by the Court in its Order granting preliminary approval, Class Counsel achieved a fair, adequate and reasonable settlement.  The results achieved in this Settlement will provide immediate monetary relief to 107 Participating Class Members (86% of the Class) who will receive on final approval an average payment of $9,707.78 and highest payment of $28,309.90.

The proposed Settlement is not to be judged against a speculative measure of what might have been achieved.  *Linney v. Cellular Alaska Pshp*, 151 F.3d 1234, 1242 (9th Cir. 1998).   The adequacy of the amount recovered must be judged as "a yielding of absolutes… Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation ..."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th  Cir. 1982) (citation omitted), "[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not ... render the settlement inadequate or unfair," *Id.* at 628.  Class Counsel submits that the proposed Settlement provides a substantial recovery for the Class and that an analysis of this factor militates heavily in favor of approving the fee request.  (Khoury Decl., ¶71.)

### 2)   The Risks of Litigation, the Skill Required and the Quality of Representation.

Plaintiffs may have a meritorious case, but Defendants have represented they would continue to vigorously contest the validity Plaintiffs' overtime claims on several bases: 1) the information Class Counsel used to formulate a class-wide damage model (i.e., informal interview of putative class members) was flawed, unreliable, and inaccurate,  2) there were weeks wherein the Class Member did not work and could not have accrued overtime, 3) Defendants paid Class

1  Members their full salaries even when they were not on specific assignments, 4) overtime hours

2  fluctuated, with some hours worked on cruise ships while traveling in international waters and/or in

3  foreign countries.  (Khoury Decl., ¶72.)

4        The overall assessment of claim viability, even assuming final certification, presented

5  several significant difficulties which included (1) the risk of losing at trial (2) the lack of time

6  records; and (3) the lack of willingness to participate by some current employees whose role beyond

7  an absent class member (such as a testifying witness or declarant) would cause them to hesitate to

8  assist for fear, whether real or imagined, of retaliation.  (Khoury Decl., ¶73.)

9        While Plaintiffs' counsel is firmly convinced there is general accord that the work

10  performed by the Class are non-exempt, this is not a given and the systems and specialized

11  platforms that Agilysys deploys for its clients could cause a lay jury to find the work was

12  sufficiently discretionary and required specialized knowledge such that the Class, even certified,

13  could lose and gain nothing at trial.  A fair settlement such as this, which provides a certain payout

14  that accounts for an approximation of work offers a way for Agilysys to avoid costly further

15  litigation and for Class Members, including current employees, to receive certain compensation

16  without attenuated circumstances inherent in the employer-employee relationship.  (Khoury Decl.,

17  ¶74.)

18        It is beyond question that Plaintiffs faced some formidable defenses to liability and

19  hurdles to proving damages, but it was the skill of experienced wage and hour class action law

20  firms, such as Class Counsel, that obtained a substantial settlement recovery for the Class early in

21  the litigation.  As a court recently recognized, the "prosecution and management of a ... class

22  action requires unique legal skills and abilities."  *In re Heritage Bond*, 2005 U.S. Dist. LEXIS

23  13627, at *39 (citation omitted).

24        Class Counsel are accomplished law firms specializing in class action litigation.  (Khoury

25  Decl., ¶¶3-7; previously filed Declarations of Jerusalem F. Belgian and Brian D. Chase, Docket

26  Nos. 30-8 and 30-9.)  Class Counsel's extensive experience in these types of cases allowed them to

27  effectively and efficiently present the Class' claims to the mediator and to Defendants, to persevere

28  through difficult and contentious settlement negotiations, reach a settlement, and memorialize the

1    terms in the Amended Settlement Agreement now before the Court for final approval.  Class

2    Counsel respectfully submits that without their experience and tenacity, this Settlement could not

3    have been achieved.  Less adept, experienced, or determined lawyers likely would not have been

4    able to the achieve in the results in this case.  (Khoury Decl., ¶75.)

5          While Class Counsel believes strongly in the merits of Plaintiffs' claims and assert they

6    could have overcome Defendant's opposition and hurdles, the issues presented a high degree of

7    litigation risk, particularly in light of the defenses asserted.  *See In re Mfrs. Life Ins. Co. Premium*

8    *Litig.*, MDL No. 1109, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 18, 1998) ("even if it

9    is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a

10   greater recovery than the Settlement -- which is not at all apparent -- there is easily enough

11   uncertainty in the mix to support settling the dispute rather than risking no recovery in future

12   proceedings") (citation omitted).

13         These risks must be considered in assessing the fairness of the settlement, which

14   guarantees a prompt and substantial recovery from Defendants.  In summary, Class Counsel

15   undertook a risky case on a pure contingency basis and achieved a favorable monetary settlement

16   for the Class.  The need to fairly compensate firms who undertake unique and risky litigation for

17   plaintiff classes was noted in *Muehler v. Land O'Lakes, Inc*. (D. Minn. 1985) 617 F.Supp. 1370,

18   1375-76 where, in justifying the award of fees representing 35% of the recovery fund, the Court

19   observed: "If the Plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort

20   when it is successful, then effective representation for Plaintiffs in these cases will disappear …"

21   For all of these reasons, the requested fee should be approved.

              **3)     The Contingent Nature of the Fee and the Financial Burden Carried
22                     by Class Counsel.**
23

24         Class Counsel undertook all of the risks of this litigation on a contingent fee basis – the

25   potential risks of surviving dispositive motions, obtaining certification, proving liability and

26   damages, prevailing in the "battle of the experts," winning at trial, and surviving post-trial motions

27   and appeals – at the same time that they faced the significant risk that they could litigate this case

28   for years, expend many thousands of hours of work, at great expense, and never be paid.

1    Having undertaken this litigation on a contingent fee basis, Class Counsel understood

2   from the outset they were embarking on a complex, expensive and lengthy litigation, which would

3   require the investment of hundreds, if not thousands, of hours of attorney time, with no guarantee

4   of ever being compensated for the investment of time and money the case would require.  In

5   undertaking that responsibility, Class Counsel had to assure that sufficient attorney resources were

6   dedicated to the successful prosecution of this litigation.  Invariably, the dedication of resources

7   precluded Class Counsel from working on cases whose outcome was more certain.  (Khoury Decl.,

8   ¶76.)

9    Importantly, many contingent fee cases do not result in compensation for Plaintiffs'

10   counsel because cases are dismissed at the pleadings stage, lost at summary judgment or after a trial

11   on the merits, or reversed on class certification after expenditure of hundreds or thousands of hours

12   of attorney and staff time and money.  Many hard-fought lawsuits ultimately produce no fee for

13   counsel because of the discovery of facts unknown when the case was commenced, changes in the

14   law while the case was pending, or decisions of judges or juries following a trial on the merits,

15   despite efforts of members of the plaintiffs' bar.

16    The contingent nature of Class Counsel's compensation militates in favor of Plaintiffs'

17   attorneys' fee request.  District Courts within the Ninth Circuit recognize that "[t]he rationale

18   behind awarding a percentage of the fund to counsel in common fund cases is the same that

19   justifies permitting contingency fee arrangements in general." *In re Quantum Health Resources,*

20   *Inc. Sec. Litig.*, 962 F. Supp. At 1257 (citing *Skelton v. General Motors Corp.*, 860 F. 2d 250, 252

21   (7th Cir. 1988)).  "The underlying premise is the existence of risk—the contingent risk of non-

22   payment." *In re Quantum Health Resources, Inc., supra* at 1257.  Because payment is contingent

23   upon receiving a favorable result for the class, an attorney should be compensated both for services

24   rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case."

25   *Id.*  (*citing*, 1 Alba Conte, Attorney Fee Awards (3d ed. 2004) § 1.09).

26    Here, Class Counsel has received no compensation for their services in prosecuting this

27   collective action for the Class or received any reimbursement of their out-of-pocket expenses.  The

28   significant outlay of cash and personnel resources has been completely at risk and wholly

Page 17

dependent upon obtaining a substantial recovery for the Class. In this atmosphere, the contingent nature of the representation takes on even greater risk and fully warrants judicial approval of the fee request before the Court.

### 4) Awards in Similar Cases.

In analogous wage and hour lawsuits and settlements, California District Courts have awarded attorneys' fees in amounts equal to or more than Class Counsel's fee request, e.g.

(1) *Gould v. Rosetta Stone, Ltd.*, USDC Northern District, Case No. C 11-01283 (SBA), 2013 U.S. Dist. LEXIS 138921, awarding attorneys' fees of 25% of a $600,000 in a precertification misclassification class action,

(2) *In re Wal-Mart, Inc., Wage & Hour Litig.*, USDC Northern District, Case No. 06-02069 (SBA), 2011 U.S. Dist. LEXIS 2225, awarding attorneys' fees of 27% of a $86 million settlement in a certified unpaid wages class action;

(3) *Birch v. Office Depot,* USDC Southern District, Case No. 06CV1690 (DMS) awarding attorneys' fees of 40% of a $16,000,000 settlement in a precertification meal and rest period class action);

(4) *Huang v. SBC Services, Inc.*, USDC Southern District, Case No. 06-CV-2238 (DMS/WMC) (Hon. William M. McCurine -- awarding attorneys' fees of 30% of a $11,200,00 settlement in a pre-certification misclassification class action,

(5) *Clark, et al. v. Michaels Stores, Inc.*, USDC Southern District, Case No. 05-CV-1678 WQH (JMA) (Hon. William Q. Hayes -- awarding attorneys' fees of 30% of $4,300,000 settlement in pre-certification meal and rest period class action);

(6) *Watson v. Raytheon Company*, USDC Southern District, Case No. CV-10-cv-00634 LAB RBB (Hon. Larry B. Burns – awarding attorneys' fees of 33-1/3% of a $2,000,000 settlement in a certified misclassification class action);

(7) *Dirienzo v. Dunbar Armored, Inc.*, USDC Southern District, Case No. CV-09-2745 DMS JMA, (Hon. Dana M. Sabraw – awarding attorneys' fees of 33-1/3% of $1,500,000 settlement in a pre-certification expense reimbursement, rest and meal period class action);

(8) *Green, et al. v. Penske Logistics, L.L.C.,* et al., USDC Southern District, Case No. CV-09-0069 DMS (CAB) (Hon. Hon. Dana M. Sabraw -- awarding attorneys' fees of 33% of a $500,000 settlement in a pre-certification vacation policy class action)[9].

---

[9]  The requested fee is also in line with fee awards in similar wage and hour class actions litigated in other district courts in the Ninth Circuit, e.g., (1) *Benitez et al. v. Wilbur*, USDC – Eastern District, 1:08-CV-1122 LJO GSA – 33.3%; (2) *Chavez et al. v. Petrissans et al.,* USDC – Eastern 1:08-CV-00122 LJO-GSA – 33.3%; (3) *Vasquez v. Aartman*, USDC – Eastern 1:02-CV05624 AWI LJO – 30%; (4) *Baganha v. California Milk Trans.* USDC – Eastern 1:01-CV-05729 AWI (LJO) – 31.25%; (5) *Randall Willis et al. v. Cal Western Transport,* and *Earl Baron et al. v. Cal  Western Transport,* USDC – Eastern, Coordinated Case No. 1:00-cv-05695 AWI (LJO) – 33%.; and (6) *Mayville v. Kor Hotel Group, LLC*., USDC – Central District, Case No. CV04-8461 ABC (RCx) (Hon. Aubrey B. Collins – 30%.)

1    In short, Class Counsel's fee request is in line with awards in similar cases.  This factor

2    also supports Class Counsel's fee request.  (Khoury Decl., ¶77.)

3                    **5)    The Reaction Of The Class Supports The Fee Request.**

4    The 86% participation level and the absence of a single objection to the proposed

5    Settlement raises a strong presumption that it is favorable to the members of the collective

6    action.  *In re Omnivision Technologies*, 2007 WL at *5 (citing *Nat'l Rural Telecomms. Coop.*

7    *V. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004),

8    
9    
10    

11    

> "The complete absence of Class Member objections to the Proposed
> Settlement speaks volumes with respect to the overwhelming degree of
> support for the Proposed Settlement among the Class Members.  That
> unanimous, positive reaction to the Proposed Settlement is compelling
> evidence that the Proposed Settlement is fair, just, reasonable, and
> adequate.")

12    Although not articulated in *Vizcaino*, district courts in the Ninth Circuit also consider the

13    reaction of the class when deciding whether to award the requested fee.  *In Re Heritage Bond*, 2005

14    U.S. Dist. LEXIS 13627, at *48 ("The presence or absence of objections from the class is also a

15    factor in determining the proper fee award.").  Here, the Notice stated among many other matters,

16    that Class Counsel intended to apply for an award of attorneys' fees of $369,704.75, (25% of the

17    common fund), and for reimbursement of out-of-pocket expenses incurred then estimated to be

18    $25,000.  The Class was also advised of the manner and the deadline to file objections.  Not a

19    single member of the Class filed an objection to the fee request or to the Settlement, itself.  The

20    absence of objections supports the fee request.

21        **D.    Class Counsel' Fee Request is Reasonable when Cross Checked Using the
                   Lodestar-Multiplier Methodology.**

22    

23    Courts often crosscheck the reasonableness of a percentage fee award against the lodestar-

24    multiplier method.  See, e.g. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941-42

25    (9th Cir. 2011).  Where the cross-check is utilized, the "calculation need entail neither

26    mathematical precision nor bean-counting" and is not intended to be a "full-blown lodestar

27    inquiry."  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *Third Circuit Task*

28    *Force Report Selection of Class Counsel*, 208 F.R.D. 340, 422 (2002) ("We emphasize …the

1  lodestar is at most a relevant factor if it …is used at all, and it should not receive exaggerated

2  importance in assessing the appropriate fee.").

3       The lodestar figure is calculated by multiplying the hours spent on the case by the

4  reasonable hourly rates for the region and attorney experience.[10]  *Id.*  A reasonable hourly rate is

5  the prevailing rate charged by attorneys of similar skill and experience in the community. *Hopson*

6  *v. Hanesbrands, Inc.,* 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. April 3, 2009.)  Courts may adjust

7  the lodestar figure upward by using a positive multiplier to reflect numerous "reasonableness"

8  factors, including the (1) quality of representation, (2) class benefits, (3) complexity and novelty of

9  issues presented, and (4) risk of nonpayment.  *Id.*  State and federal courts often grant multipliers of

10  four or more.  (*See*, *Vizcaino*, 290 F.3d at 1051 [citations omitted] ("[M]"multiples ranging from

11  one to four are frequently awarded in common fund cases when the lodestar method is applied.")).

12       Class Counsel has worked 2,132.6 hours and has calculated the lodestar fee on those

13  hours at $945,870.00 at rates reflecting those earned in the market place, and those previously

14  approved by other Courts in California.  (Khoury Decl., ¶78; Declaration of Jerusalem F. Beligan

15  ("Beligan Decl.) at ¶9, 10.)  As Class Counsel's lodestar fee is nearly three times more than their

16  fee request of $369,704.75, a multiplier on their lodestar fee is <u>not</u> sought.  (Khoury Decl. ¶80,

17  Exh. 1 – Summary of Hours and Lodestar Fee.)

18      **E.**    **Class Counsel's Hourly Rates Are Reasonable**

19       Class Counsel is entitled to hourly rates charged by attorneys of comparable experience,

20  reputation, and ability for similar litigation.  *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001);

21  *Children's Hospital and Med. Center v. Belshe*, 97 Cal. 4th 740, 783 (2002) (affirming rates that

22  were "within the range of reasonable rates charged by and judicially awarded comparable attorneys

23  for comparable work").  When determining a reasonable hourly rate, Courts may consider factors

24  such as the attorney's skill and experience, the nature of the work performed, the relevant area of

25

26                  

27  [10]  The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.  *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 306-307 (3rd Cir. 2005) (footnote omitted).  Regardless of the methodology employed, the Court must ensure that the fee

28  award is reasonable.  *In re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

1   expertise and the attorney's customary billing rates.  *Flannery v. California Highway Patrol*, 61

2   Cal. App. 4th 629, 632 (1998).  Prior determinations of counsel's rates are strong evidence of their

3   reasonableness.  *See Margolin v. Regional Planning Commission*, 34 Cal.App.3d 999, 1005 (1982).

4          Here, Class Counsels' skill and experience support their hourly rates.  Class Counsel's

5   hourly rates are between $450 and $850 and are in line with rates typically approved in wage and

6   hour class action litigation in California.  (Khoury Decl., ¶81; Beligan Decl., ¶10.)  A reasonable

7   hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant

8   community. *PLCM Group, Inc. v. Drexler* (2000) 22 Cal. 4th 1084, 1095, more recently, *Hopson v.*

9   *Hanesbrands Inc.* (N.D. Cal. Apr. 3, 2009) 2009 U.S. Dist. LEXIS 33900.

10         Class Counsel's skill and experience support their hourly rates.  Their practice is limited

11  exclusively to litigation, focusing on the representation of employees and consumers in wage and

12  hour and consumer class action matters and have been appointed class counsel or co-class counsel

13  in over 200 of these cases.  Their hourly rates have been approved by Courts in California in the

14  Los Angeles, Sacramento, Orange County and San Diego Superior Courts.  (Khoury Decl. ¶88;

15  Beligan Decl., ¶¶4, 10.)

16         As leading attorneys in the field, Plaintiffs' counsel continually monitor the prevailing

17  market rates charged by both defense and plaintiff law firms and set the billing rates of their

18  attorneys and paralegals/law clerks to follow the prevailing market rates in the private sector for

19  attorneys and staff of comparable skill, qualifications and experience.  Other wage and hour

20  attorneys working as class counsel before California courts charge comparable if not higher rates.

21  (Khoury Decl. ¶83, Exh. 3, Westlaw Court Express's Legal Billing Report, Volume 14, Number 3,

22  California Region for December 2012; Exh. 4, 2012 National Law Journal survey of hourly billing

23  rates for Partners and Associates.)

24         **F.     Class Counsel's Total Hours are Reasonable.**

25         Under California law, every hour reasonably spent on the plaintiffs' case is compensable:

26  "Absent special circumstances rendering the award unjust, an attorney fee award should ordinarily

27  include compensation for all the hours reasonably spent, including those relating solely to the fee."

28  *Ketchum*, 24 Cal.4th at 1133; *Serrano v. Priest*, 32 Cal.3d 621, 633, 639 (1982) ("*Serrano IV*")

Page 21

Memorandum of Points and Authorities ISO Order Granting
Final Approval of Class Action Settlement and Entering Judgment          Case No. CV12-3516-SBA

1    (parties should recover for all hours reasonably spent).  Hours are reasonable if "at the time

2    rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or

3    protect his client's interest."  *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).

4    "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably

5    expended in pursuit of success at the point in time when the work was performed."  *Wooldridge v.*

6    *Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990); *see also*, *Norman v. Housing Auth.*,

7    836 F.2d 1292, 1306 (11th Cir. 1988)  ("The measure of reasonable hours is determined by the

8    profession's judgment of the time that may be consciously billed and not the least time in which it

9    might theoretically have been done").

10          Here, the time expended on this litigation by Class Counsel was necessary, reasonable,

11   and non-duplicative.  Class Counsel committed 2,132.6 of attorney and staff hours on this case

12   before and after this action was filed.  (Khoury Decl.,¶84, Exh. 1.)  Although two firms worked on

13   this case, Class Counsel divided all work with the goal of minimizing the duplication of efforts.

14   The hours expended by Class Counsel are reasonable.  (Khoury Decl., ¶85.)

15          **G**.     **Class Counsel's Lodestar Exceeds the Requested Fee, Confirming its**

16                 **Reasonableness.**

17          Applying Class Counsel's hourly rates to the hours worked results in a lodestar fee of

18   $945,870.00. (Khoury Decl., ¶78; Ex. 1.)  The requested fee award results in a so-called "negative

19   multiplier" which suggests the percentage of the fund amount is reasonable and fair.  *See Chun-*

20   *Hoon v. McKee Foods Corp.,*  716 F.Supp.2d 848, 854; *In re Portal Software, Inc. Securities*

21   *Litigation,* 2007 U.S. Dist. LEXIS 88886, 2007 WL 4171201, at *16 (N.D. Cal. 2007)].  Class

22   Counsel's lodestar fee exceeds the requested fee thus confirming its reasonableness.

23          **H**.     **The Litigation Expenses Are Reasonable**

24          "There is no doubt that an attorney who has created a common fund for the benefit of the

25   class is entitled to reimbursement of reasonable litigation expenses from that fund."  *West v. Circle*

26   *K Stores, Inc.*, No. Civ. S-04-0438, 2006 U.S. Dist. LEXIS 76558, at *25 (E.D. Cal. Oct. 19, 2006);

27   *see also In Re Businessland Secs. Litig.*, No. C-90-20476-RFP, 1991 U.S. Dist. LEXIS 8962 at *6

28   (N.D. Cal. June 14, 1991) (overruling objection that litigation expenses should be within the

1    requested 30% fee).  Here, the Settlement permits Class Counsel to request reimbursement of their

2    litigation expenses, and no one has objected to such request.

3          Class Counsel have incurred costs totaling $21,256.51. (Khoury Decl., 82, Exh. 2;

4    Beligan Decl., ¶9.)   These expenses were incidental and necessary to the effective representation

5    of the Class.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *In re dj Orthopedics, Inc.*

6    *Secs. Litig*., No. 01-CV-2238-K (RBB), 2004 U.S. Dist. LEXIS 11457, at *21 (S.D. Cal. June 21,

7    2004).  These expenses were incurred for such things as research, filing fees, preparing for and

8    participate in mediation, mediation fees, travel, private investigator, and copies.  (Khoury Decl.,

9    Exhs. 1, 2.)  No objection has been made to Class Counsel's request for reimbursement of these

10   expenses.  Class Counsel respectfully requests the Court approve their request for reimbursement

11   of litigation expenses.

12          **I.      The Class Representative Payments Are Reasonable.**

13          Subject to the Court's approval, Class Counsel requests for each of the six named Plaintiffs

14   the modest sum of $5,000, for their time and effort prosecuting this case, risks undertaken for the

15   payment of costs if this action had been unsuccessful, stigma upon future employment opportunities

16   for having sued a former employer, a general release of all claims related to their employment, and

17   the substantial recoveries to be enjoyed by the Class. (Khoury Decl., ¶93.)

18          Each Plaintiff invested much personal time and effort into the investigation both before

19   and after this class action was commenced, the prosecution, and the settlement of the case, as set

20   forth in their respective declarations.  It should also be emphasized that the requested awards in the

21   aggregate amount of $30,000 is modest, i.e., .02%, in comparison to the total settlement amount and

22   consistent with applicable law.   (Khoury Decl., ¶98.) (See Declarations of Terrell Jones, Michael

23   Johnson, Derrick Paige, Wilfredo Betancourt, Yolanda McBrayer, and Michael Pierson filed

24   herewith.)

25          **J.      Claims Administration Expenses Should be Approved.**

26          Class Counsel also seeks payment of $19,125.80 to the Rust Consulting, Inc., for its work

27   in administering the proposed Settlement.  (Roe Decl. ¶23, Exh. D.) The Roe Declaration details

28   the work Rust performed and remaining to be performed following final approval. The requested

Page 23

Memorandum of Points and Authorities ISO Order Granting
Final Approval of Class Action Settlement and Entering Judgment                Case No. CV12-3516-SBA

1  amount is fair and reasonable and should be awarded.  (Khoury Decl., ¶94.)

2  **IX.      CONCLUSION**

3          Based on the Class' favorable response, coupled with the substantial payments to be made

4  to Participating Class Members, Class Counsel respectfully requests the Court grant final approval

5  of the proposed Settlement, award the Class Representative Payments, attorneys' fees and litigation

6  costs, litigation costs, and claims administration expenses in the amounts requested.

7                                              Respectfully submitted,

8  Dated:  April 15, 2013                      COHELAN KHOURY & SINGER

9                                              By: /s/ Diana M. Khoury
10                                                  Diana M. Khoury
                                               Attorneys for Plaintiffs and Class
11

12  Dated: April 15, 2014                      BISNAR | CHASE

13                                              By: /s/ Jerusalem F. Beligan
14
                                                   Jerusalem F. Beligan
15                                              Attorneys for Plaintiffs and the Class

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities ISO Order Granting
Final Approval of Class Action Settlement and Entering Judgment          Case No. CV12-3516-SBA