1
2
3
4
5

**BISNAR|CHASE LLP**
Brian D. Chase, (SBN 164109)
  *bchase@bisnarchase.com*
Jerusalem F. Beligan, (SBN 211258)
  *jbeligan@bisnarchase.com*
1301 Dove Street, Suite 120
Newport Beach, California 92660
Telephone: (949)752-2999/Facsimile: (949)752-2777

6

Attorneys for Plaintiffs and the Class

7

*[Additional Counsel listed, next page]*

8
9
10

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18

TERRELL JONES, a California resident;
MICHAEL JOHNSON, a Florida resident;
DERRICK PAIGE, a Texas resident;
WILFREDO BETANCOURT, a Nevada
Resident; YOLANDA McBRAYER, a
former Colorado resident; and MICHAEL
PIERSON, a North Carolina resident,
individually, and on behalf of all others
similarly situated,

                    Plaintiffs,

        vs.

19
20
21
22
23

AGILYSYS, INC., an Ohio corporation;
AGILYSYS NV, LLC, a Delaware limited
liability company; and DOES 1 through 100,
inclusive,

                    Defendants.

Case No. CV12-3516 SBA

**COLLECTIVE ACTION**

**[UNOPPOSED]**

**DECLARATION OF ISAM C. KHOURY IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ORDER GRANTING FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND
ENTERING JUDGMENT**

Date:       May 20, 2014
Time:       1:00 p.m.
Dept:       Courtroom 1 (Fourth Floor)
Judge:     Hon. Saundra B. Armstrong

24
25

Filed:        July 6, 2012
Trial date:  None set

26
27
28

Declaration of Isam C. Khoury ISO Motion for Order Granting
Final Approval of Class Action Settlement                                    Case No. CV12-3516-SBA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COHELAN KHOURY & SINGER**
Isam C. Khoury, (SBN 128643)
  *Ikhoury@ckslaw.com*
Michael D. Singer, (SBN 115301)
  *msinger@ckslaw.com*
Diana M. Khoury, (SBN 128643)
  *dkhoury@ckslaw.com*
J. Jason Hill, (SBN 179630)
  *jhill@ckslaw.com*
605 "C" Street, Suite 200
San Diego, CA 92101-5305
Telephone: (619) 595-3001 / Facsimile: (619) 595-3000

Attorneys for Plaintiffs and the Class

Declaration of Isam C. Khoury ISO Motion for Order Granting
Final Approval of Class Action Settlement                                    Case No. CV12-3516-SBA

I, Isam C. Khoury, declare as follows:

1.     I am a founding partner of the law firm of Cohelan Khoury & Singer, co-counsel of record for Plaintiffs and the class in this matter. I am duly admitted to practice before all the courts of the state of California. The following facts are within my personal knowledge and if called to testify I could and would competently testify thereto.

2.     I am a 1973 Hastings School of Law graduate and was admitted to the California State Bar in 1974 and am admitted to practice in all state courts in California and in the following federal courts: The U.S. District Court for the Central District of California, the U.S. District Court for the Southern District of California, and the U.S. District Court for the Northern District of California. I have made appearances in numerous federal courts around the country as well as the First Circuit Court of the State of Hawaii. I am AV rated by Martindale-Hubbell, as are many attorneys in our firm.

3.     In 1981, Timothy D. Cohelan and I formed Cohelan & Khoury, a Partnership of Professional Law Corporations and within a few years began to focus on class actions. In 2009, Cohelan & Khoury became Cohelan Khoury & Singer. Our firm represents plaintiffs in complex and class action litigation, including wage and hour, labor and employment, antitrust, consumer protection, construction defect and other public interest type class actions. Attached hereto, and incorporated herein by this reference as Exhibit 5 is a true and correct copy of our firm's resume.

4.     Cohelan Khoury & Singer is certified by the State Bar of California to provide the Mandatory Continuing Legal Education activity entitled "Litigating California Class Actions" and conducts MCLE certified seminars on this topic. Senior Partner, Timothy D. Cohelan, is the author of Cohelan on California Class Actions (Thomson West 1997-2013), part of Thomson West's Expert Series, which is updated annually. Managing Partner, Michael D. Singer, is a contributing author on the CEB publication California Wage and Hour Law: Compliance and Litigation (2010, updated annually), in which he wrote the opening chapter overview on California Wage and Hour laws, including the public policy underpinnings for those laws. Mr. Singer has served as a columnist for the California State

Bar, Litigation Section on wage and hour litigation and has contributed articles on wage and hour and class action issues through the years to numerous California publications. He lectures several times per year for continuing education courses on wage and hour and class action issues at events in San Diego, Orange County, Los Angeles, and San Francisco, and also serves as wage and hour amicus liaison for California Employment Lawyers, drafting, reviewing, and coordinating amicus filings on wage and hour issues in the California Supreme Court and Courts of Appeal.  Mr. Singer has been engaged in the practice of labor and employment law since 2000, handling well over 100 wage and hour class actions and several individual labor cases, and has litigated several types of employment actions, including complex ERISA employee welfare benefit plan cases, as well as wage and hour class actions before Federal and State Courts in California. In addition, Mr. Singer has drafted numerous appellate briefs as the appellant, respondent, or amicus curiae in employment class and individual actions. As co-Class Counsel in the *Brinker Restaurant Corp. v. Superior Court* [(2008)165 Cal.App.4th 25] matter, he argued before the Fourth District Court of Appeal in May 2008 on transfer from the California Supreme Court, and co-authored the granted Petition for Review of the July 22, 2008 decision in the California Supreme Court, which was granted on October 22, 2008, oral argument heard on November 8, 2011, ruling issued on April 12, 2012.  Furthermore, Cohelan Khoury & Singer has successfully tried class cases, obtained appellate reversals of class certification denials (*Hicks v. Kaufman and Broad*, (2001) 89 Cal.App.4th 908), certified wage and hour classes, and has been appointed class counsel in dozens of cases.

5.      As a part of our overall firm philosophy lawyers perform community service and pro bono work.  Firm volunteer work includes service through the Legal Aid Society-Employment Law Center (LAS-ELC), San Diego Volunteer Lawyer Program (SDVLP), Consumer Attorneys of San Diego (CASD), and Voices for Children.  Mr. Singer currently serves on the LAS-ELC Board of Directors.  Mr. Cohelan currently serves on the Board of Directors for San Diego Volunteer Lawyers Program and completed 24 years of volunteer judicial service as a Judge Pro Tem of the San Diego Superior Court.  Partner Diana M.

1   Khoury has been a member of the San Diego County Bar Association, Consumer Attorneys

2   of San Diego, Consumer Attorneys of California, and American Association for Justice.  She

3   has continuously served on the Board of Directors for the Consumer Attorneys of San Diego

4   ("CASD") since 2010 and has served on numerous committees through the years for CASD.

5   Ms. Khoury is also a member of the board of the San Diego County Bar Association

6   Foundation, a 501(c) (3) charitable entity.  Recent pro bono victories include a settlement

7   with the City of San Diego which prohibits the City from targeting homeless persons for

8   illegal lodging tickets under Penal Code Section 467(j). (*Spencer v. City of San Diego*,

9   USDC Case No 04CV-2314 BEN (WMC).)  The Parties in *Spencer* entered into a settlement

10  that has the effect of increasing the number of available City of San Diego shelter beds.

11         6.      Associates at the firm are encouraged to perform pro bono legal services.

12  For example, Kimberly Neilson participated in a class action trial advocating on behalf of

13  low-income tenants for local rent control ordinance violations which resulted in a verdict on

14  the tenants' behalf.  Ms. Neilson has been an active member of the San Diego County Bar

15  Association, having served as a committee member; the Lawyers Club of San Diego, having

16  served as a committee member and as a volunteer for the annual Women's Resource Fair;

17  and, devotes approximately 10-15 hours each month volunteering and advocating on behalf

18  of San Diego County foster youth with Voices for Children, the local affiliate of Court

19  Appointed Special Advocates.

20         7.      As Class Counsel, Cohelan Khoury & Singer has actively commenced,

21  prosecuted and concluded numerous state and federal class actions, many of which are

22  employment law related.  Cohelan Khoury & Singer has played a central role in the

23  resolution of the following class action cases which have recently received final approval by

24  the Court:  *Gonzalez, et al. v. Freedom Communications, Inc. d/b/a The Orange County*

25  *Register*, Orange County Superior Court Case No. 03CC08756 [home delivery carriers

26  misclassified as "independent contractors"], *Aravena v. Cisco Systems, Inc.*, Orange County

27  Superior Court Case No. 07CC01367 [OT misclassification claim by IT employees], *Horne*

28  *v. Kaiser Foundation Hospitals, Inc.,* Alameda Superior Court Case No. RG07357061 [OT

Misclassification by IT employees], *Penuela, et al. v. Southern California Permanente Medical Group*, Los Angeles Superior Court Case No. BC396462 [OT misclassification claim by IT employees], *First Franklin Employment Cases*, San Diego County Superior Court Case No. J.C.C.P. 4598 [expense reimbursement claim], *KONICA MINOLTA WAGE CASES*, Orange County Superior Court Case No. J.C.C.P. 4527 [expense reimbursement claim], *Segal v. Juniper Networks, Inc*., Santa Clara County Superior Court Case No. 1-09-CV-142859 [OT misclassification claim by IT employees], *Perez v. Standard Concrete Products, Inc.,* Orange County Superior Court Case No. 30-2008-00211820 [meal and rest period claim], *Venturini v. Genentech, Inc.,* San Francisco Superior Court Case No. CGC-09-492494 [OT misclassification claim by IT employees], *Durrani v. Western Digital Corporation, et al*., Orange County Superior Court Case No. 30-2009-00268212 [OT misclassification claim by IT Employees], *Watson v. Raytheon Company*, United States District Court, Southern District of California Case No. 10CV0634 [Ot misclassification claim by IT employees], *Bills v. Sutter Health*, Alameda Superior Court Case No. RG09465894 [Ot misclassification claim by IT employees], *Steet v. Alfred Angelo, Inc.*, Los Angeles Superior Court Case No. BC419429 [OT misclassification claim], STEROID HORMONE PRODUCT CASES, Los Angeles Superior Court Case No. JCCP 4363 [consumer products claim], *Ferrari v. Entercom Communications Corp., et al.*, San Francisco Superior Court Case No. CGC-09-486404 [expense reimbursement claim], *McKinley v. Entravision Communications Corporation*, Los Angeles Superior Court Case No. BC434291 [expense reimbursement claim], *Smith v. California Pizza Kitchen*, San Diego Superior Court Case No. 37-2008-00083992 [OT misclassification claims by managers and assistant managers], *Picoy v. 20/20 Communications, Inc.*, Los Angeles Superior Court Case No. BC428743 [expense reimbursement claim], *Dunn v. The Kroger Company, et al.*, Los Angeles Superior Court Case No. Case No. BC323252 [meal and rest break claims], *Gallen v. Gambro Healthcare, Inc.*, Orange County Superior Court Case No. 04CC00571 [OT claims by nurses], *Rogge v. Safeway, Inc.*, et al., Alameda Superior Court Case No. RG10505702 [secret shopper reimbursement], *Spears, et al. v. Brake Masters, Inc.*,

Declaration of Isam C. Khoury ISO Motion for Order Granting
Final Approval of Class Action Settlement                    Case No. CV12-3516-SBA

Sacramento Superior Court Case No. 34-2010-00076319 [OT misclassification claims by managers and assistant and floating managers], *Rogers v. Les Schwab Tire Centers of California, Inc.*, Sacramento Superior Court Case No. 34-2009-00066320 [OT misclassification claims by Assistant Store Managers], *Blagmon v. Farmers Insurance Company, Inc.,* Los Angeles Superior Court Case No. BC 436311 [OT misclassification claims by IT employees], *Estrada v. Burrtec Waste Group, Inc.et al*., San Diego Superior Court Case No. 2001-96268 [meal and rest period claims by non-exempt garbage truck drivers], *White v. EDCO Disposal Corp., et al.*, San Diego Superior Court Case No. 2011-00088803 [meal and rest period claims by non-exempt garbage truck drivers], *Cordova, et al. v. Republic Services, Inc*., Alameda Superior Court Case No. RG 11593578 [meal and rest period claims by non-exempt garbage truck drivers], *Wells Fargo Bank Wage and Hour Proceedings*, San Francisco Superior Court Case No. JCCP 4654 [expense reimbursement claims by Home Mortgage Consultants]; *Talent v. Leslie's Poolmart, Inc.*, Sacramento Superior Court Case No. 2012-00128539 [expense reimbursement claims], among others.

8.    We consider ourselves experienced and qualified to evaluate the claims alleged in the litigation, and viability of the defenses asserted.  Our experience has allowed our firm to assist in achieving an efficient resolution of the claims in this matter.

## INTRODUCTION AND BACKGROUND

9.    With this Motion Plaintiffs Terrell Jones, Michael Johnson, Derrick Paige, Wilfredo Betancourt, Yolanda McBrayer, and Michael Pierson ("Plaintiffs") seek final approval of a collective action settlement for Plaintiffs and the Class of individuals employed by Defendants Agilysys, Inc., and Agilysys NV, LLC. ("Defendants" or "Agilysys") as Installation Specialists (the "IS" employees or positions), who were misclassified as "exempt" from the requirements of overtime wages under the Federal Labor Standards Act ("FLSA") at any time during the period, July 5, 2009 through March 4, 2013, ("Class Period").

10.    This wage and hour class action and collective action was filed pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 23 and the FLSA.  The FLSA collective

1    action involves a total of 125 current and former IS employees.  On final approval, the

2    proposed non-reversionary Settlement for $1,478,819 will fully resolve all issues.

3         11.    Defendants are reputed to be the leading developer and marketer of

4    proprietary enterprise software, services and solutions to the hospitality and retail industries.

5    Agilysys services casinos, resorts, hotels, food service venues, stadiums, cruise lines,

6    grocery stores, convenient stores, general and specialty retail business and partners.

7    Agilysys is a large multi-national corporation with locations nationwide, and develops

8    customized software suites for large clients for Point-of-Sale ("POS") revenue handling.  To

9    develop a client plan, other employees engage in "site surveys" that result in a detailed and

10    pre-packaged plan, custom suited for the client's business operations.  Once the client

11    purchases the software packet, it includes all necessary steps, including hardware, system,

12    network and computer upgrades necessary to install Agilysys' proprietary POS software and

13    hardware, with numerous step-by-step "Installation and Upgrade Guides" which detail

14    virtually every aspect of the installation process to be followed by the IS employees.

15         12.    Plaintiffs are former IS employees of Agilysys whose duties entailed the

16    installation, configuration, troubleshooting and  maintenance of pre-packaged specialized

17    software sold by Defendants to large clients in the hospitality industry (i.e., casinos, hotels,

18    cruise lines, etc.).

19         13.    Plaintiffs' duties and responsibilities were manual, routine, and repetitive.

20    Their job was labor intensive and pre-determined by step-by-step "Installation Guides."  For

21    those clients who only require software installation, the IS employees literally point, click

22    and read the instructions to download and install software.  Occasionally, the site surveyor

23    misses something, like the need for an operating system upgrade for the Agilysys software to

24    work properly, which then gets re-submitted and included in the installation.  The IS

25    employees do not engage in any selection of software, hardware, system or application for

26    Agilysys' clients as this is all done by the sales and site surveyors.  At its core, the IS

27    employees are a technician position, with no significant discretion or independent judgment.

28    IS employees merely follow the installation guide, configure, set-up, and troubleshoot

1   Agilysys' software package.  Problems with the software or the need for patchwork for any

2   missing steps in the installation guide are addressed by developers or the site-surveyor, not

3   the IS employees.  Once IS employees were sufficiently trained on the software and

4   installation guides in various types of hospitality groups, they were trained to be site

5   surveyors to move into more refined company positions with less manual work and more

6   client development.  The IS position required no advanced degree, licensure or state

7   sanctioned certification.  A basic ability to follow the specifications is all that had to be a

8   successful installer.

9       14.    During the Class Period, Defendants' normal business hours were 8 a.m. to

10  5 p.m., Monday through Friday.  Plaintiffs and the IS employees, however, worked beyond

11  these regular hours and days due to their work and the nature of their hospitality-industry

12  clients' work.  The IS employees were expected to be flexible in relation to the clients'

13  schedule to minimize the interruption of the clients' business which resulted in working odd

14  hours at low impact times to conduct the installation and configuration process.  The IS

15  employees worked nights and weekends, and were expected to travel with little advance

16  notice; otherwise, they would be subject to disciplinary action, including termination.  A

17  cruise ship, for example, only wanted its POS software installed in the early morning hours

18  during which its casino operations were minimal impacted.  The same was true for other

19  hotels, resorts and casinos, which would require system installations at low-peak times.

20  Plaintiffs reported substantial weekly overtime hours worked.

21      15.    Plaintiffs contend they and other IS employees could not record all of their

22  time worked.

23      16.    According to Defendants' employee manual, "[e]xempt employees are

24  required to complete a time card on an *exception basis only*" and are "exempt from the

25  overtime provisions of the [FLSA]."  Plaintiffs contend all IS employees were directed to

26  stop recording the actual hours they worked, and instead to insert the hours they were

27  budgeted to work that day:  "The rule of thumb should be 8 hours budgeted each day onsite."

28  Plaintiffs were instructed to record 8 hours per any day for billable time to clients, even if

1   the daily work was 9, 10 or more hours of actual work.

2       17.   The result was that Agilysys had no accurate measure of total hours worked

3   necessary to show whether, on an hourly basis, it ever satisfied basic salary thresholds for

4   Plaintiffs and/or the Class.  For some IS employees, whose wages started around $16/hour or

5   less, if actual work time were tracked, they did not meet the FLSA requirements because the

6   hourly rate/wages were diluted by overtime hours worked.

7   ## HISTORY OF LITIGATION AND PROCEDURAL BACKGROUND

8       18.   On or about July 5, 2012, Plaintiffs filed the action *Jones, et al.  v.  Agilysys,*

9   *Inc., et al.,* Case No. CV-12-3516, in the U.S.D.C. for the Northern District of California, on

10  behalf of current and former IS employees of Defendants.  Defendants employed IS

11  employees in California, as well as throughout the United States.  Plaintiffs contend that

12  during the relevant Class Periods, the IS employees were misclassified as exempt from the

13  overtime provisions of the FLSA and the applicable state wage and hour laws of California,

14  Nevada, Florida, Texas, Colorado, and North Carolina.  The initial Collective and Class

15  Action Complaint ("Complaint") asserted seven causes of action on behalf of a putative

16  class under the FLSA and six putative state law classes pursuant to FRCP Rule 23 for unpaid

17  overtime.  The California plaintiff, Terrell Jones, also sought to certify six subclasses within

18  the California Class for: (1) failure to pay premium wages for noncompliant meal and rest

19  periods in violation of California Labor Code §§ 226.7 and 512; (2) failure to provide

20  accurate wage statements in violation of California Labor Code §§ 226 and 1174; (3) failure

21  to timely pay wages upon termination in violation of California Labor Code §§ 201-203; (4)

22  failure to reimburse necessary business expenses in violation of California Labor Code §§

23  2802; and (5) unfair competition in violation of California Business & Professions Code §

24  17200, et seq.

25      19.   With the issuance of the Summons, the Court issued an Order assigning the

26  matter to the Honorable Donna M. Ryu and setting an Initial Case Management Conference

27  for October 10, 2012.

28      20.   On or about July 6, 2012, Plaintiffs mailed a certified letter to the LWDA

providing notice of alleged Labor Code violations pursuant to California Labor Code § 2699(f).

21.     On or about July 25, 2012, Defendants filed a Declination to Proceed before a Magistrate Judge and Request for Reassignment to a United States District Judge.  In addition, the Parties submitted a Stipulation Extending Time for Defendants to respond or otherwise plead to the Complaint from July 27, 2012 to August 26, 2012.

22.     On or about July 27, 2012, the Court issued an Order Reassigning the matter to the Honorable Saundra Brown Armstrong for all further proceedings.

23.     On or about July 30, 2012, the Court issued a Case Management Scheduling Order setting a telephonic Case Management Conference ("CMC") for October 10, 2012.

24.     Without indication from the LWDA that it intended to investigate the alleged violations, on or about August 9, 2012, Plaintiffs, on behalf of themselves and all other similarly situated aggrieved current and former employees of Defendants, filed a First Amended Complaint (the "Operative Complaint") re-asserting the aforementioned claims and adding an eighth cause of action for alleged violations of the PAGA.

25.     On or about August 23, 2012, the Parties filed a Joint Stipulation and Motion to Extend Time to File a Responsive Pleading to the Operative Complaint, which requested that the Court extend Defendants' deadline to file a response to the Operative Complaint from August 25 to September 26.  The request was granted.

26.     Despite their diligent efforts to meet and confer about the scope and substance of the allegations in the Operative Complaint, the Parties required more time to exchange information and to discuss the issues in an effort to avoid unnecessary motion practice.  On or about September 19, 2012, the Parties filed a Joint Motion requesting an additional extension of the deadline for Defendants to respond to the Operative Complaint, as well as a continuance of the CMC.

27.     On or about September 21, 2012, the Court entered an Order extending Defendants' deadline to respond to the Operative Complaint to October 26, and continued the CMC to December 6.

28.     With continued meet and confer discussions, an agreement to mediate the matter by February 2013 was achieved by the parties.  Accordingly, on October 25, 2012, a Stipulation and Joint Motion was filed requesting the Court to stay all proceedings, including the CMC, and the Rule 26 deadlines, and to toll the statute of limitations ("SOL") for Plaintiffs' FLSA claims until 30 days after the completion of mediation.

29.     On or about October 26, 2012, the Court issued an Order (1) staying all proceedings in the action until March 15, 2013; (2) tolling the SOL on Plaintiffs' FLSA claims for the duration of the stay; and (3) continuing the CMC to March 20, 2013.

30.     The Parties appeared before Mark Rudy, an experienced and renowned wage and hour mediator.  Unfortunately, the Parties were unable to reach an agreement by day's end.  As set forth in the next section, a mediator's proposal was issued and accepted by both sides on March 4, 2013.  On March 7, the Parties engaged in a post-mediation conference to discuss issues relating to the preparation of the Agreement, incentive payments for Plaintiffs, multiplier for the California Class, the deadline to file this motion, and the continued tolling of the FLSA SOL.  In that same conference, the parties agreed to enter into a stipulation to continue the CMC, toll the FLSA SOL, and set a deadline to file this motion.

31.     Pursuant to the parties' stipulation, on or about March 12, 2013, the Court issued an Order (1) vacating the March 20 CMC; (2) extending the tolling of the FLSA SOL until 30-days after entry of an order granting final approval of the settlement; and (3) initially setting a May 7 deadline for filing this motion (which was continued to June 6 pursuant to stipulation and order).

32.     With sufficient investigation, research, document analysis and extrapolation of class-wide damages, on or about February 28, 2013, the Parties engaged in serious and informed arms-length negotiations before Mr. Rudy, a respected and experienced wage and hour mediator in San Francisco, California.  Although the matter did not settle on this date, signification progress towards reaching an agreement was accomplished.  On March 1, Mr. Rudy provided the parties with a mediator's proposal, setting forth the principal terms of the Settlement Agreement, which was accepted by the parties on March 4.

33.     On June 6, 2013, Plaintiffs previously filed a motion for preliminary approval of a class settlement.  The motion asked the Court to approve two settlement classes: (1) a national FLSA class and (2) a Rule 23 California Class.  On August 15, 2013, the Court denied Plaintiffs' motion on the grounds that the California settlement class failed to satisfy Rule 23's numerosity requirement.

34.     On or about October 9, 2013, the Parties agreed to enter into an amended class settlement agreement based on a single nationwide FLSA class.

## INVESTIGATION AND EXTENT OF DISCOVERY

35.     Substantial investigation, legal research and interviews with Plaintiffs and other putative Class Members took place prior to the filing of this class action.  Defendants operate multiple offices throughout California and the United States in which it employs IS employees, including Arizona, Florida, Georgia, Maryland, Mississippi, North Dakota, New Jersey, Nevada, New York, Oregon, Pennsylvania, Texas, Virginia, Washington, and West Virginia.  Six class representatives were located and retained to represent the FLSA Class. Due to the numerous states involved, significant legal research had to be performed to determine the applicable exemptions, overtime requirements, available remedies, and statute of limitations ("SOLs") of each state.

36.     Plaintiffs, and other putative Class Members, were interviewed to ascertain their duties and method of compensation to determine whether the IS employees fell within the Computer Professional or Administrative exemptions.  Their duties were then compared to the applicable state and federal laws and regulations to determine whether their duties met the respective tests.  In addition, Plaintiffs, and other putative class members, were interviewed to determine the amount of overtime hours they worked and requested to produce documents in their possession which supported their claims.

37.     In response, Plaintiffs, as well as other putative class members, produced to Plaintiffs' counsel over 7,000 pages of documents and electronic data which included, among other things: (1) Defendants' employee handbook; (2) written job descriptions of IS employees; (3) timesheets and timecards; (4) emails; (5) policies relating to travel, comp

1    days, recordation of hours and expenses; (6) paycheck stubs; (7) project schedules; (8)

2    installation schedules; (9) project and status reports; (10) site surveys; (11) travel receipts;

3    (12) expense reports; (13) performance reviews; (14) installation or configuration manuals

4    and guides; and (10) a related prior class action lawsuit.  Plaintiffs' counsel painstakingly

5    reviewed each of the documents produced to ensure a complete investigation and with an

6    eye towards successfully proving the allegations contained in the Operative Complaint on a

7    class-wide basis.  This initial workup and acquisition of documents proved crucial in the

8    successful prosecution of this class action.

9         38.    Subsequent to the filing of the Operative Complaint, the Parties engaged in

10   extensive cooperative informal discovery and the exchange of documents and information.

11   In addition to the documents produced by Plaintiffs, Defendants provided extensive

12   documents and thousands of pages of putative class data to Plaintiffs and Class Counsel to

13   review and analyze.  This information included employment data for the entire putative

14   Class, policies and documents relevant to the issues in the litigation, and Plaintiffs' wage

15   statements, expense reports, and personnel files.

16        39.    On September 21, 2012, Defendants produced Plaintiffs' personnel records,

17   which totaled 665 pages.

18        40.    On January 8, 2013, Defendants produced an additional 548 pages of

19   documents consisting of job descriptions for the IS employees and redacted Class data for

20   employees who held IS positions, as well as expense report data, billable hour data, and

21   wage statements of the Plaintiffs.  This information was also provided in three separate MS

22   Excel spreadsheets, containing over 5,500 lines of combined data.

23        41.    On January 17, 2013, after meeting-and-conferring regarding the scope of

24   the putative Class and which job titles encompass the Class, Defendants provided Plaintiffs

25   with an additional 24 pages of documents, comprising of job descriptions and redacted Class

26   data for the IS positions.

27        42.    Also provided to Plaintiffs on January 17, 2013 was a MS Excel spreadsheet

28   made up of 718 lines of data representing: (1) employee ID; (2) employment State; (3) last

Page 14

Declaration of Isam C. Khoury ISO Motion for Order Granting
Final Approval of Class Action Settlement                    Case No. CV12-3516-SBA

1   and original hire dates; (4) seniority date; (5) termination date; (6) status as of 12/26/2012;

2   (7) length of service in weeks; (8) job begin and job end dates; (9) division; (10) location;

3   and (11) job title.  Through manipulation of this spreadsheet data, Plaintiffs were able to

4   determine the number of unique employee ID numbers (prospective Class Members), the

5   number of current and former employees, and the number of eligible workweeks through

6   December 2012.

7      43.   On February 20, 2013, Defendants produced 64 more pages of Plaintiffs'

8   time sheets for the May 2011 through September 2011 time period.

9      44.   Plaintiffs were able to use the data provided by Defendants, as well as the

10   information gathered from Plaintiffs, to calculate for the Class Period, the estimated number

11   of workweeks, the average hourly, overtime and double-time rates of pay, and the average

12   hours of overtime worked each week.  This information was then used to create Plaintiffs'

13   mediation damage model and calculate the amount of unpaid overtime wages owed to class

14   members during the Class Period.  All of the information obtained during the investigative

15   and discovery phase, allowed the Parties to prepare for a class-wide damage model and to

16   prepare for a meaningful mediation on February 28, 2013.

17   **SUMMARY OF AMENDED SETTLEMENT AGREEMENT TERMS**

18      45.   **Gross Settlement Amount**.  Subject to Court approval, Plaintiffs and the

19   Class settled their FLSA claims against Defendants for the non-reversionary Gross

20   Settlement Amount ("GSA") of $1,478,819.00, which sum includes (a) attorneys' fees of up

21   to 25% of the GSA or rather $369,704.75; (b) litigation costs of $21,256.51; (c) Class

22   Representative Payments of up to $5,000 to each of the six named Plaintiffs; and (d) claims

23   administration expenses to Rust Consulting, Inc., of $19,125.80.

24      46.   **Net Settlement Amount**.  After all Court-approved deductions, the

25   remaining sum, the Net Settlement Amount ("NSA") estimated at $1,038,731.94 will be

26   entirely distributed proportionally to Class Members who have returned Claim Forms/FLSA

27   Consent to Join Forms, ("Participating Class Members").  Participating Class Members will

28   receive a share of the NSA based upon the number of weeks he or she worked during the

Declaration of Isam C. Khoury ISO Motion for Order Granting
Final Approval of Class Action Settlement                   Case No. CV12-3516-SBA

Class Period in relation to the number of weeks worked by all Participating Class Members. With a NSA of $1,038,731.94 divided by the aggregate number of weeks worked by Participating Class Members, Participating Class Members can expect to receive an estimated gross amount of $89.15 for each week worked during the Class Period.  The Notice to the Class advised that for each week worked during the Class Period, a Class Member could expect to receive $76.79.

47.     Should a Class Member not return a Claim Form, his/her share of the NSA will be proportionately distributed among the Participating Class Members.  No portion of the Settlement will revert to Defendants.

48.     **Released Claims**.  Participating Class Members, (only those who return a Claim Form/FLSA Consent to Join form) will release any and all actions, causes of action, grievances, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (including attorneys' fees and costs incurred), of whatever character, in law or in equity, known or unknown, asserted, whether in tort, contract, or for violation of any state or federal statute, rule or regulation, including state or federal wage and hour laws, whether for economic damages, non-economic damages, restitution, penalties, or liquidated damages *arising out of or related* to the claims and facts asserted including, without limitation, claims based on the allegations in the First Amended Complaint ("FAC").

## THE SETTLEMENT IS A REASONABLE COMPROMISE OF CLAIMS

49.     While Plaintiffs believe in the merits of their case, they also recognize the inherent risks and uncertainty of litigation and understand the benefit of providing a significant settlement sum now as opposed to risking (i) denial of the FLSA collective action certification; and/or (ii) an unfavorable result on the merits on summary judgment, trial and/or on an appeal, a process that can take several more years to litigate.

50.     Plaintiffs' claims involve complex and disputed legal issues and fact-specific arguments which the Parties litigated fiercely since inception of the action. Plaintiffs firmly believe in the strength of their claims, but Agilysys also has strong defenses to liability.  There are also risks to Plaintiffs' ability to maintain conditional certification of

1  a collective action.

2        51.    The FLSA claim for the alleged failure to pay overtime wages to the Class

3  by instructing them to not report all hours worked would involve representative sampling

4  and testimony of Class Members and of Defendants' management in offices around the

5  country due to the complete lack of time records.

6        52.    Although Defendants believe Plaintiffs will face several steep hurdles going

7  forward should this matter not resolve, Agilysys is also mindful there are risks and

8  significant expenses associated with proceeding further.

9        53.    Based upon information obtained from the Plaintiffs and from other putative

10  Class Members through the informal interview process regarding the number of overtime

11  hours they worked, the Classes' blended hourly overtime rate of $37.95, and the 12,973

12  discrete number of weeks worked by the Class produced by Defendants, Class Counsel

13  estimated the value of each overtime hour to be $492,325.35.  Assuming the Class worked

14  five to ten hours of overtime per week, Defendants' liability was estimated to be in the range

15  of $2,461,626.75 to $4,923,253.50.

16        54.    Plaintiffs' estimate of the overtime exposure was subject to rational

17  discounting in light of the following factors: (1) Defendants' legal argument concerning

18  obstacles to conditional certification under the FLSA; (2) Defendants' assertion that the

19  aggregate overtime hours worked based upon information provided by Plaintiffs and other

20  Class Members is unreliable and inaccurate; (3) Defendants' contention there were weeks

21  during which IS employees did not work and yet were paid their full salaries;  and (4)

22  Defendants' contention that some overtime hours were worked on cruise ships while in

23  international waters and/or in foreign countries.  Defendants vehemently contend that neither

24  state nor federal laws would allow Plaintiffs to recover damages for overtime hours worked

25  in foreign territory.

26        55.    The proposed non-reversionary Settlement of $1,478,819 is 60% to 30%, of

27  the estimated potential liability ranging from $2,461,626.75 to $4,923,253.50, respectively.

28  Class Counsel submits this range is very reasonable in light of the risks of obtaining an

1   unfavorable decision on certification, summary judgment or trial, which is supported by the

2   Court's Order Granting Preliminary Approval filed January, 10, 2014. [Docket No. 33.]

3       56.     This Court determined the potential collective members were "similarly

4   situated" within the meaning of the FLSA for conditional certification.  [Docket No. 33.]

5       57.     The Court determined that Plaintiffs had adequately demonstrated the

6   potential collective action members were subject to the same policy that resulted in

7   Agilysys' failure to pay them wages to which they were lawfully entitled under the FLSA.

8   [Docket No. 27.]

9       58.     In granting preliminary approval of the proposed Settlement on January 10,

10  2014, the Court approved the proposed Class Notice, subject to its requested modifications,

11  appointed the six named Plaintiffs as Class Representatives, and Bisnar|Chase and Cohelan

12  Khoury & Singer as Class Counsel, and appointed Rust Consulting, Inc., ("Rust") as the

13  administrator to administer the notice and opt-in claims process.

14              **NOTICE TO THE CLASS AND CLASS PARTICIPATION**

15      59.     On receipt of the Class list from Defendants, Rust conducted a National

16  Change of Address database search to update Class Member addresses.

17      60.     On January 31, 2014, Rust mailed the Court-approved Notice of Class

18  Action Settlement ("Notice"), Claim Form/FLSA Consent To Join Form, and a pre-printed,

19  postage paid return envelope (collectively "Class Notice") to 129 members of the Class.

20      61.     The Notice informed the Class of the material terms of the Settlement, (i.e.,

21  the non-reversionary nature of the settlement funds and the formula for distribution of the

22  settlement monies), their rights to participate in the Settlement by choosing to opt-in with

23  the return of a signed Claim Form, to object to the Settlement, and the procedures and timing

24  for doing each act.  The Notice also provided the date, time, and place scheduled for the

25  Final Approval Hearing and instructions if a Class Member wished to be heard at the time of

26  the hearing.  The Notice further informed the Class of the claims to be released in exchange

27  for a share of the proposed Settlement should they return a Claim Form.

28      62.     The accompanying Claim Form included the Class Member's individualized

Declaration of Isam C. Khoury ISO Motion for Order Granting
Final Approval of Class Action Settlement                        Case No. CV12-3516-SBA

information upon which their share of the Settlement would be calculated, i.e., the number of weeks worked during the Class Period, and based thereon, the estimated amount each could expect to receive if he/she opted in to the Settlement.

63.     Regarding Class Members for whom Rust could not locate valid addresses, Class Counsel independently obtained the services of an investigator who successfully located these Class Members.

64.     On March 10, 2014, Rust mailed a postcard to 55 members of the Class–who had not by that date returned a Claim Form--and provided its toll-free number if the Class Member needed to request another Class Notice be mailed to them.

65.     The Class has responded favorably to the proposed Settlement, with 86% of the Class, (107 of 125), choosing to participate in the Settlement. The Claims process included the successful mailing of the Notice and Claim Form/FLSA Consent to Join Form to *all members of the Class*, a reminder postcard, and Class Counsels' response to numerous Class Member calls during the claims period.

66.     These 107 Participating Class Members represent 90% of all weeks worked by the Class, and claim $934,858.75 before redistribution of the claimed shares of the NSA.

67.     At the weekly pay rate of $89.15, these Participating Class Members will receive an average payment of $9,707.78, and the highest payment estimated at $28,309.90.

68.     Moreover, not a single objection to the Settlement was filed, or served on the administrator, or Plaintiffs' Counsel.

69.     Plaintiffs therefore submit that the exceptionally high participation rate, coupled with the lack of a single objection, demonstrates the Class' acceptance of the Settlement as one which is fair, adequate and reasonable and consistent with this Court's finding, i.e., "The Court finds that the settlement represents a reasonable result, particularly in light of the risks and delay inherent in further prosecution of the action." [Docket No. 33.] In light of all the information provided above, the proposed Settlement should be granted final approval.

**REQUESTED ATTORNEYS' FEES/LITIGATION EXPENSES/CLASS
REPRESENTATIVE PAYMENTS**

70.     Under the Settlement, Class Counsel now respectfully moves for an award of attorneys' fees for $369,704.75, or rather 25% of the GSA common fund, litigation costs of $21,256.51 originally estimated to be $25,000, Class Representative Payments of $5,000 to each of the six named Plaintiffs, and administration expenses of $19,125.80 to Rust, all as approved by this Court.  Each of these sums is fair and reasonable, Defendants do not oppose these requests, and not a single member of the Class objected to these requests.

71.     Class Counsel submits that the proposed Settlement provides a substantial recovery for the Class and that an analysis of this factor militates heavily in favor of approving the fee request.

72.     Plaintiffs may have a meritorious case, but Defendants have represented they would continue to vigorously contest the validity Plaintiffs' overtime claims on several bases: 1) the information Class Counsel used to formulate a class-wide damage model (i.e., informal interview of putative class members) was flawed, unreliable, and inaccurate,  2) there were weeks wherein the Class Member did not work and could not have accrued overtime, 3) Defendants paid Class Members their full salaries even when they were not on specific assignments, 4) overtime hours fluctuated, with some hours worked on cruise ships while traveling in international waters and/or in foreign countries.

73.     The overall assessment of claim viability, even assuming final certification, presented several significant difficulties which included (1) the risk of losing at trial (2) the lack of time records; and (3) the lack of willingness to participate by some current employees whose role beyond an absent class member (such as a testifying witness or declarant) would cause them to hesitate to assist for fear, whether real or imagined, of retaliation.

74.     While Plaintiffs' counsel is firmly convinced there is general accord that the work performed by the Class are non-exempt, this is not a given and the systems and specialized platforms that Agilysys deploys for its clients could cause a lay jury to find the

Declaration of Isam C. Khoury ISO Motion for Order Granting
Final Approval of Class Action Settlement                           Case No. CV12-3516-SBA

work was sufficiently discretionary and required specialized knowledge such that the Class, even certified, could lose and gain nothing at trial.  A fair settlement such as this, which provides a certain payout that accounts for an approximation of work offers a way for Agilysys to avoid costly further litigation and for Class Members, including current employees, to receive certain compensation without attenuated circumstances inherent in the employer-employee relationship.

75.     Class Counsel's extensive experience in these types of cases allowed them to effectively and efficiently present the Class' claims to the mediator and to Defendants, to persevere through difficult and contentious settlement negotiations, reach a settlement, and memorialize the terms in the Amended Settlement Agreement now before the Court for final approval.  Class Counsel respectfully submits that without their experience and tenacity, this Settlement could not have been achieved.  Less adept, experienced, or determined lawyers likely would not have been able to the achieve in the results in this case.

76.     Having undertaken this litigation on a contingent fee basis, Class Counsel understood from the outset they were embarking on a complex, expensive and lengthy litigation, which would require the investment of hundreds, if not thousands, of hours of attorney time, with no guarantee of ever being compensated for the investment of time and money the case would require.  In undertaking that responsibility, Class Counsel had to assure that sufficient attorney resources were dedicated to the successful prosecution of this litigation.  Invariably, the dedication of resources precluded Class Counsel from working on cases whose outcome was more certain.

77.     In analogous wage and hour lawsuits and settlements, California District Courts have awarded attorneys' fees in amounts equal to or more than Class Counsel's fee request, e.g.

(1)     *Gould v. Rosetta Stone, Ltd*., USDC Northern District, Case No. C 11-01283 (SBA), 2013 U.S. Dist. LEXIS 138921, awarding attorneys' fees of 25% of a $600,000 in a precertification misclassification class action,

(2)     *In re Wal-Mart, Inc., Wage & Hour Litig*., USDC Northern District, Case No. 06-02069 (SBA), 2010 U.S. Dist. LEXIS 2225, awarding attorneys' fees of 27% of a $86 million settlement in a certified unpaid wages class action;

(3)     *Birch v. Office Depot,* USDC Southern District, Case No. 06CV1690 (DMS) awarding attorneys' fees of 40% of a $16,000,000 settlement in a precertification meal and rest

period class action);

(4)    *Huang v. SBC Services, Inc.*, USDC Southern District, Case No. 06-CV-2238 (DMS/WMC) (Hon. William M. McCurine -- awarding attorneys' fees of 30% of a $11,200,00 settlement in a pre-certification misclassification class action,

(5)    *Clark, et al. v. Michaels Stores, Inc.*, USDC Southern District, Case No. 05-CV-1678 WQH (JMA) (Hon. William Q. Hayes -- awarding attorneys' fees of 30% of $4,300,000 settlement in pre-certification meal and rest period class action);

(6)    *Watson v. Raytheon Company*, USDC Southern District, Case No. CV-10-cv-00634 LAB RBB (Hon. Larry B. Burns – awarding attorneys' fees of 33-1/3% of a $2,000,000 settlement in a certified misclassification class action);

(7)    *Dirienzo v. Dunbar Armored, Inc.*, USDC Southern District, Case No. CV-09-2745 DMS JMA, (Hon. Dana M. Sabraw – awarding attorneys' fees of 33-1/3% of $1,500,000 settlement in a pre-certification expense reimbursement, rest and meal period class action);

(8)    *Green, et al. v. Penske Logistics, L.L.C.,* et al., USDC Southern District, Case No. CV-09-0069 DMS (CAB) (Hon. Hon. Dana M. Sabraw -- awarding attorneys' fees of 33% of a $500,000 settlement in a pre-certification vacation policy class action); and

(9)    *Gardner v. GC Services, LP.*, USDC Southern District, Case No. 10cv0997-IEG (CAB) – (Chief Justice Irma E. Gonzalez – awarding attorneys' fees of 30% of a $975,000 settlement in a pre-certification failure to pay straight and overtime wages class action).

In short, Class Counsel's fee request is in line with awards in similar cases.  This factor also supports Class Counsel's fee request.

78.    Class Counsel has worked 2,132.6 hours and has calculated the lodestar fee on those hours at $945,870.00 at rates reflecting those earned in the market place, and those previously approved by other Courts in California.

79.    Included within these hours is the anticipated 20 to 25 hours, to prepare for and attend the final approval hearing, to provide supplemental information and documentation following the filing of the final approval and fees' motions should the Court request, to interact with Defense counsel and the administrator with respect to late claims, funding and distributions, approval of checks, transmittal letters, tax forms, respond to Class Member inquiries, handling uncashed checks, etc.

80.    As Class Counsel's lodestar fee is over their fee request of $369,704.75, a multiplier on their lodestar fee is not sought.  Attached hereto as Exhibits 1 is a true and correct copy of the Summary of Hours and Lodestar Fee by attorneys representing the Class.

81.    Class Counsels' skill and experience support their hourly rates.  Class Counsel's hourly rates are between $450 and $850 and are in line with rates typically approved in wage and

Page 22

hour class action litigation in California.

82.     I am a Principal and Senior Partner, and have devoted 55.1 hours in representing the Class in this case.  I am a 1970 graduate of the University of California at San Diego and received a law degree from Hastings School of Law in 1973. I am a member of the State Bar of California, admitted in 1974, the San Diego County Bar Association, Consumer Attorneys of San Diego and Consumer Attorneys of California.  I have successfully litigated numerous complex civil matters to verdict, jury and non-jury.  My main areas of practice include civil tort litigation, personal injury, business torts, antitrust and class action cases. In recent years, I have emphasized wage and hour class action litigation, including all aspects of overtime eligibility and the evolving nature of California and federal employment law.  I have been approved as a continuing legal education lecturer and have participated in seminars on class action wage and hour issues, the complexities of mediation, and the procedural requirements involved in class action settlements.  My hourly rate is $750 per hour.  The number of hours I expended for work performed and total attorney's fees of $41,325.00 are reasonable and necessary.

83.     Timothy D. Cohelan, Principal and Senior Partner, has devoted 35.90 hours in representing the Class in this case.  Mr. Cohelan has been a member of California Bar since 1974 and the District of Columbia since 1996 and has been in continuous practice since 1974.  Mr. Cohelan has tried class and non-class civil matters to conclusion and collectively has achieved substantial recoveries for persons participating in class actions.  Mr. Cohelan is the author of Cohelan on California Class Actions (Thomson West 1997-2013), part of Thomson West's Expert Series, which is updated annually.  Mr. Cohelan's hourly rate is $850 per hour.  The number of hours expended for the work performed results in attorney's fees of $11,135.00 are reasonable and necessary.

84.     Michael D. Singer, Managing Partner, has devoted 84.4 hours to this matter representing the Class.  Mr. Singer is a 1984 graduate of U.C. Hastings Law School and graduated magna cum laude from San Francisco State University in 1980 with a B.A. in English.  He was admitted to the State Bar of California in 1984 and the State Bar of Colorado in 2001.  Mr. Singer is a contributing author on the CEB publication California Wage and

Hour Law: Compliance and Litigation (2010, updated annually), in which he wrote the opening chapter overview on California Wage and Hour laws, including the public policy underpinnings for those laws.  He has also served as a columnist for the California State Bar, Litigation Section on wage and hour litigation and has contributed articles on wage and hour and class action issues through the years to numerous California publications.  Mr. Singer lectures several times each year for continuing education courses on wage and hour and class action issues at events in San Diego, Orange County, Los Angeles, and San Francisco.  He also serves as wage and hour amicus liaison for California Employment Lawyers, drafting, reviewing, and coordinating amicus filings on wage and hour issues in the California Supreme Court and Courts of Appeal.  Mr. Singer has been engaged in the practice of labor and employment law since 2000, handling well over 100 wage and hour class actions and several individual labor cases.  He has litigated several types of employment actions, including complex ERISA employee welfare benefit plan cases, as well as wage and hour class actions before Federal and State Courts in California. In addition, Mr. Singer has drafted numerous appellate briefs as the appellant, respondent, or amicus curiae in employment class and individual actions.  As co-Class Counsel in the *Brinker Restaurant Corp. v. Superior Court* [(2008)165 Cal.App.4th 25] matter, Mr. Singer argued before the Fourth District Court of Appeal in May 2008 on transfer from the California Supreme Court, and co-authored the granted Petition for Review of the July 22, 2008 decision in the California Supreme Court, which was granted on October 22, 2008, oral argument heard on November 8, 2011, ruling issued on April 12, 2012.  Mr. Singer's hourly rate is $750 per hour.  On occasion, Mr. Singer performs hourly work and has been compensated at his billing rate of $750 per hour.  The number of hours Mr. Singer expended for work performed in this matter and total attorney's fees of $63,300.00 are reasonable and necessary.

85.     Diana M. Khoury, a Partner of Cohelan Khoury & Singer, is a 1975 graduate of San Diego State University where she received her Bachelor's of Science degree.  She received her law degree from Western State University College of Law in 1986 and was

admitted to the State Bar of California 1987.  Since 1987, Ms. Khoury has been a member of the San Diego County Bar Association, Consumer Attorneys of San Diego, Consumer Attorneys of California, and American Association for Justice.  She has continuously served on the Board of Directors for the Consumer Attorneys of San Diego ("CASD") since 2010 and has served on numerous committees through the years for CASD as well as the San Diego County Bar Association. Ms. Khoury has been selected as a "Super Lawyer" for 2010, 2011, 2012 and 2013, by her peers, Southern California Super Lawyers Magazine, and is AV rated by Martindale –Hubbell.  Ms. Khoury also serves on the San Diego County Bar Association Foundation, a 501(c) (3) charitable entity.   Ms. Khoury has successfully litigated numerous personal injury matters and has taken many to verdict in jury trials and beyond.  In recent years, in the wage and hour class action litigation area, she has been primarily responsible for the negotiation of the terms of the settlement agreement (following agreement of the principal terms of the settlement), the class notices, claim forms, and other class documents, and taking these class actions settlement through the approval process and to judgment and beyond.  Ms. Khoury worked 237.3 hours in representing the Class. Ms. Khoury has been primarily responsible for advancing cases in our firm through to final approval on no less than 135 cases over the course of these past five years.  Ms. Khoury's hourly rate is $650 per hour.  The number of hours expended by Ms. Khoury for work performed and the corresponding attorney's fees of $154,245.00 are reasonable and necessary.

86.    J. Jason Hill, an Associate at the law firm of Cohelan Khoury & Singer, invested 379 hours to representing the Class in this matter.  Mr. Hill is a 1992 graduate of the University of Illinois at Urbana-Champaign and holds a B.A. in Philosophy, Political Science and Communications. In 1995, he received his J.D. degree from California Western School of Law, where he was a member of the Law Review an International Law Journal, as well as editor of the Telecommunications Law Forum. Currently, Mr. Hill is admitted to the bar in both California and Illinois, and is a broker licensed by the California Department of Real Estate. He maintains memberships not only with the San Diego County Bar Association, but

also the National Association of Realtors, the California Association of Realtors and the San Diego Association of Realtors.  Prior to joining Cohelan Khoury & Singer, Mr. Hill represented large institutional clients in a variety of civil litigation settings, including insurance coverage, employment law, health care law, general and professional liability, as well as, premises and product liability claims. He has particular emphasis on all aspects of professional liability claims in a healthcare setting, as well as claims brought pursuant to the Emergency Medical Treatment and Active Labor Act (EMTALA) and the Elder Abuse and Dependent Adult Civil Protections Act (EADACPA). Mr. Hill is also an accomplished appellate practitioner and has briefed and/or argued over 40 matters in both state and federal courts of appeal, yielding several published decisions on a range of legal issues. Mr. Hill's hourly rate is $450 per hour.  The number of hours expended by Mr. Hill for work performed and total attorney's fees of $170,550.00 are reasonable and necessary.

87.     The amount of time spent on prosecuting this case was reasonable and justified, particularly in light of the result achieved for the Class.

88.     Class Counsel's skill and experience support their hourly rates.  Their practice is limited exclusively to litigation, focusing on the representation of employees and consumers in wage and hour and consumer class action matters and have been appointed class counsel or co-class counsel in over 200 of these cases.  Cohelan, Khoury & Singer's hourly rates have been approved by Courts in California in Los Angeles, Sacramento, Orange County and San Diego counties.

89.     As leading attorneys in the field, Plaintiffs' counsel continually monitor the prevailing market rates charged by both defense and plaintiff law firms and set the billing rates of their attorneys and paralegals/law clerks to follow the prevailing market rates in the private sector for attorneys and staff of comparable skill, qualifications and experience.  Other wage and hour attorneys working as class counsel before California courts charge comparable if not higher rates.  Attached hereto as Exhibit 3 and 4 are true and correct copies of the Westlaw Court Express's Legal Billing Report, Volume 14, Number 3, California Region for December 2012 and the 2012 National Law Journal survey of hourly billing rates for Partners and Associates.

Page 26

90.     The time expended on this litigation by Class Counsel was necessary, reasonable, and non-duplicative.  Class Counsel committed 2,132.6 of attorney and staff hours on this case before and after this action was filed.

91.     Although two firms worked on this case, Class Counsel divided all work with the goal of minimizing the duplication of efforts.   The hours expended by Class Counsel are reasonable.

92.     Class Counsel have incurred costs totaling $21,256.51.  These expenses were incidental and necessary to the effective representation of the Class. Attached hereto as exhibit 2 is a true and correct copy Itemization of Cohelan Khoury & singer's Costs.

93.     Subject to the Court's approval, Class Counsel requests for each of the six named Plaintiffs the modest sum of $5,000, for their time and effort prosecuting this case, risks undertaken for the payment of costs if this action had been unsuccessful, stigma upon future employment opportunities for having sued a former employer, a general release of all claims related to their employment, and the substantial recoveries to be enjoyed by the Class.

94.     Plaintiffs risked a potential judgment taken against them if this matter had not been successfully concluded.

95.     The risk of payment of Defendants' costs, in itself alone, is a sufficient basis for an award to each of these Class Representatives.   Few individuals are willing to take this risk, and these class representatives championed a cause for others employed throughout the nation with potentially huge monetary risks.

96.     Plaintiffs also risked their professional reputations by commencing legal action against their former employer.  Because their names are publicly associated with this lawsuit, the named Plaintiffs risk being perceived by current or future employers as litigious or troublemakers, and having employment opportunities denied on that basis.

97.     In Class Counsel's experience, the typical enhancement award in wage and hour cases ranges from $5,000 to $75,000, although some awards may be higher.

98.     Each Plaintiff invested much personal time and effort into the investigation

both before and after this class action was commenced, the prosecution, and the settlement of the case, as set forth in their respective declarations.  It should also be emphasized that the requested awards in the aggregate amount of $30,000 is modest, i.e., .02%, in comparison to the total settlement amount and consistent with applicable law.

99.    The requested enhancement payments were stated in the Class Notice and no one objected to said request.

100.    Class Counsel also seeks payment of $19,125.80 to the appointed Claims Administrator's, Rust Consulting, Inc., for its work in administering the proposed Settlement. The Declaration of Stacy Roe submitted details the work Rust performed and the work remaining to be performed by Rust following final approval under the Amended Settlement Agreement. The requested amount is fair and reasonable and should be awarded for the excellent work it has performed and for all work required to conclude its duties under the Settlement.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on this 15th day of April, 2014 in San Diego, California.

/s/ Isam C. Khoury

Isam C. Khoury, Declarant